People v Crespo (2018 NY Slip Op 06849)

People v Crespo

2018 NY Slip Op 06849 [32 NY3d 176]

October 16, 2018

DiFIORE, J.

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, December 26, 2018

[*1]

The People of the State of New York, Appellant,
v
Raymond Crespo, Respondent.

Argued February 8, 2018; reargued September 12, 2018; decided October 16, 2018

People v Crespo, 144 AD3d 461, reversed.

{**32 NY3d at 178} OPINION OF THE COURT

Chief Judge DiFiore.

"[T]he right to self-representation embodies one of the most cherished ideals of our culture; the right of an individual to determine his [or her] own destiny" (People v McIntyre, 36 NY2d 10, 14 [1974]). Indeed, the right to represent oneself at trial is guaranteed under both the New York State and the Federal Constitutions (see NY Const, art I, § 6; Faretta v California, 422 US 806 [1975]; People v Arroyo, 98 NY2d 101, 103 [2002]). This right, however, is not absolute. The timeliness of the request, among other things, is a prerequisite under both federal and state law and the commencement of trial is established as the point at which the application may be denied as untimely as a matter of law (see McIntyre, 36 NY2d at 17; see e.g. Martinez v Court of Appeal of Cal., Fourth Appellate Dist., 528 US 152, 161-162 [2000]).
Here, prior to opening statements, but after 11 jurors were selected and sworn, defendant sought to invoke his right to proceed pro se. As set forth in the seminal case of People v McIntyre, there is a three-prong analysis to determine when a defendant in a criminal case may invoke this right: "(1) the request [must be] unequivocal and timely asserted, (2) there [must have] been a knowing and intelligent waiver of the right to counsel, and (3) the defendant [must] not engage[ ] in conduct which would prevent the fair and orderly exposition of the issues" (36 NY2d 10, 17 [1974]). This appeal relates to the first prong—specifically, we must consider whether defendant's [*2]request was untimely as a matter of law because it was made after commencement of the trial. We hold that, in conformity with the statutory scheme set forth in the Criminal Procedure Law, the jury trial has commenced when jury selection begins. Accordingly, the trial court's determination that defendant's request to proceed pro se, made near the conclusion of jury selection, was untimely was not error.
I.
On January 21, 2013, defendant and the victim exchanged insults inside a restaurant, which led to a physical altercation. Defendant, who was apparently upset after losing that fight, obtained a knife from his codefendant, initiated a second confrontation and stabbed the victim. He was arrested while attempting to flee the scene. By indictment filed February 11, 2013, defendant was charged with attempted murder in the{**32 NY3d at 179} second degree, assault in the first degree and criminal possession of a weapon in the third degree.
On October 17, 2014, after conducting a suppression hearing, the trial court denied the motion to suppress both the bloodstained clothes seized from the defendant incident to his arrest and the knife recovered from the scene. The court also advised the parties that the trial would begin the following week, telling defendant that "[t]he first stage of the trial is picking the jury that will decide your case." During that appearance, defendant's assigned counsel advised the court that defendant wanted a new attorney and that if new counsel was not assigned, defendant did not wish to be present at trial. The court informed defendant that he was free to hire another attorney but that the case, which was close to two years old, would not be delayed any further. The court also advised defendant that it was in his best interests to attend the trial but that, if he chose to absent himself, the trial would go forward without him. After a colloquy in which defendant expressed his dissatisfaction with his counsel and stated that he was not going to speak with him, defendant refused to come to court.[FN1] The court stated for the record that defendant was "voluntarily absenting himself."
The court adjourned the matter to the following week for jury selection. At that appearance, defense counsel asked to be relieved based on defendant's continuing refusal to speak with him. The court denied the request, explaining that it had no reason to believe defendant's dissatisfaction with counsel was rooted in anything other than the realities of his case. The court then had defendant produced in order to fully explain his right to be present at trial. The court adjourned the matter until the next day to permit defendant to confer with counsel, but defendant refused to do so.
On October 23, the parties began jury selection in defendant's absence, selecting and swearing 11 trial jurors. The following day defendant voluntarily appeared and, for the first time, asked to represent himself. The court rejected defendant's request to proceed pro se, telling defendant that it was "too late to make that request now in the middle of trial." In response, defendant maintained that he wanted to advise the{**32 NY3d at 180} jury of his dissatisfaction with defense counsel. The court told defendant: "if you are going to tell me that when I bring the jury in you're going to jump up and disrupt the court proceedings and say he is not my lawyer, I am not going to have that." When defendant confirmed this was in fact his intention, the court excluded defendant from the courtroom and stated that it [*3]viewed defendant's conduct at this stage of the proceedings to be "simple manipulation."[FN2] The parties then completed jury selection and proceeded to opening statements.
After several trial witnesses testified, the People requested that the court conduct an inquiry under the second prong of McIntyre into defendant's level of education and his understanding of the law—i.e., whether defendant's waiver of the right to counsel would be voluntary. The court refused, observing that "there is no point in allocuting him because I am not going to let him go pro se even if I find he is able to do that at this point. We are in the middle of a trial." The court also expressed skepticism as to whether defendant would be able to comport himself in an appropriate manner, as required under the third prong of McIntyre.
Each day, defendant chose to remain in the holding cell rather than appear in court and, as a result, the trial was conducted in his absence. The jury returned a verdict convicting defendant of assault in the first degree and criminal possession of a weapon in the third degree, but acquitting him of attempted murder in the second degree.
The Appellate Division reversed, on the law, and remanded for a new trial (144 AD3d 461 [1st Dept 2016]). Rejecting the People's argument that a timely request to proceed pro se had to be asserted prior to jury selection when the trial commenced, the Court cited McIntyre for the proposition that defendant's requests to represent himself were timely as they occurred before opening statements. The Court then concluded that the trial court had violated defendant's right to represent himself by summarily denying defendant's timely requests without ascertaining whether they were knowingly or intelligently made. A Judge of this Court granted the People leave to appeal (29 NY3d 947 [2017]) and we now reverse.{**32 NY3d at 181}
II.
As noted above, People v McIntyre established the standard by which the right of a criminal defendant to conduct his or her own defense is considered. In McIntyre, the defendant asked to represent himself "[a]fter the jury had been drawn but not yet impaneled" (36 NY2d at 12). The trial court made a brief inquiry into the defendant's background and also elicited from the defendant that he believed defense counsel was "very competent" (36 NY2d at 13). The court then denied the request based, in part, on the defendant's outburst of misbehavior, which we described as either exhibited in response to the court's ruling or provoked by the trial court's abusive manner in conducting the inquiry of the defendant (see 36 NY2d at 19). The specific issue presented in McIntyre was the sufficiency of the trial court's inquiry into whether the defendant's waiver of the right to counsel was knowing and voluntary, as well as the trial court's consideration of the appropriate factors in that regard, including the defendant's behavior in the courtroom.
In the course of determining that the trial court's inquiry had been deficient, the Court explained that, as a general rule, "a pro se application [is] timely interposed when it is asserted before the trial commences"—a point when a thorough inquiry can be conducted without causing significant delay or confusion in the trial proceedings (36 NY2d at 17). We emphasized that, after the trial has commenced, the defendant's right to proceed pro se is "severely constricted and will be granted in the trial court's discretion and only in compelling circumstances" (36 NY2d at 17). Nevertheless, the motion to proceed pro se in McIntyre was not denied as untimely in the trial court and on appeal was deemed "unequivocal and timely having been interposed prior to the prosecution's opening statement" based upon the Code of Criminal Procedure (36 NY2d at 18).[FN3]{**32 NY3d at 182}
[1] Although this Court decided McIntyre in 1974, the defendant's judgment of conviction was rendered in June 1971 when the Code of Criminal Procedure—the precursor to the CPL—was still in effect. Under the Code of Criminal Procedure, the trial began with opening statements and did not include jury selection (see former Code Crim Pro § 388 [1]; Steckler, 259 NY at 432) and was accordingly used by McIntyre as the basis for the demarcation of when a trial commences. By contrast, when the CPL took effect in September 1971, a different starting point was established for a jury trial. The CPL provides that "[a] jury trial commences with the selection of the jury and includes all further proceedings through the rendition of a verdict" (CPL 1.20 [11]). Likewise, CPL 260.30, which sets forth the order of a jury trial, lists the selection and swearing of the jury as the initial stage of the trial (CPL 260.30 [1]). By contrast, a nonjury trial "commences with the first opening address" (CPL 1.20 [11]). Thus, under the CPL, while the commencement of a nonjury trial continues to be at the point the People begin their opening statement, the commencement of a jury trial has been advanced by the legislature to the start of jury selection.
The statutory definition of when a trial commences provided in CPL 1.20 (11) is a modern and commonsense view of the practical realities of a jury trial and is consistent with our case law defining the parameters of the criminal trial as defined by the CPL in other contexts. In People v Antommarchi (80 NY2d 247, 250 [1992]), we recognized that a defendant's fundamental right to be present at material stages of the trial under CPL 260.20 is violated by his or her absence during the questioning of prospective jurors during the impaneling of the jury. Clearly a material stage of the trial includes the jury selection process{**32 NY3d at 183} wherein "prospective jurors' backgrounds and their ability to weigh the evidence" are explored (80 NY2d at 250; see also People v Toliver, 89 NY2d 843, 844 [1996] ["the selection of the jury is part of the criminal trial"]; People v Velasco, 77 NY2d 469, 472 [1991] ["a defendant's right to be present [*4]during the trial of an indictment include(s) presence during the impaneling of the jury"]; People v Mullen, 44 NY2d 1, 4 [1978]). The holding in Antommarchi that jury selection is a material stage of the trial "represented a dramatic shift away from customary and established procedure" (People v Mitchell, 80 NY2d 519, 525 [1992]). We have also held that a defendant who absents him or herself after the commencement of jury selection has absconded after the trial has begun and has therefore forfeited the fundamental right to be present at that trial (see People v Fraser, 65 NY2d 436, 444 [1985]; see also People v Parker, 57 NY2d 136 [1982]). Similarly in this context, our consistent interpretation of the commencement of trial for purposes of asserting the right to proceed pro se—as beginning with jury selection—is in keeping with the purpose of the CPL which, in combination with the Penal Law, has been "carefully designed as an integrated framework for the effective administration of criminal justice" (Governor's Approval Mem, Bill Jacket, L 1970, chs 996, 997, 1970 Legis Ann at 533).[FN4]
[2] We reject defendant's argument that since there may be different interpretations of the exact point at which jury selection begins, reliance on the CPL definition that trial commences with jury selection is an unworkable gauge. Defendant maintains that, if jury selection is indeed the starting point, the entire jury must be selected and sworn before the trial is deemed to have commenced (see People v Ayala, 75 NY2d 422, 428-429 [1990] [stating that the suppression hearing is not part of the trial in the defendant's case as the trial "began only after the jury was sworn"]).[FN5] [*5]However, courts are "governed by the principle that we must interpret a statute so as to avoid an unreasonable or absurd application of the law" (People v 
 {**32 NY3d at 184}Garson, 6 NY3d 604, 614 [2006] [internal quotation marks and citations omitted]). Here, the statute we interpret is plainly stated and elevates the fundamental importance of jury selection as an integral part of the trial, a status not reflected in defendant's argument or in the "distinctly archaic" Code of Criminal Procedure (see Mem of Commn on Rev of Penal Law and Crim Code, Bill Jacket, L 1970, ch 996 at 6, 1970 Legis Ann at 37). CPL 1.20 (11) states that the jury trial commences with—not after—the selection of the jury. In addition, CPL 270.15 (1) provides that jury selection begins when no less than 12 prospective jurors are placed in the jury box and sworn to truthfully answer questions about their qualifications to serve as jurors.[FN6] This rule is clear and relatively simple to understand, particularly to trial lawyers who fully appreciate the overarching importance of the selection of each individual juror who will be tasked to determine the guilt or innocence of the accused. To the extent that a motion to proceed pro se is made after{**32 NY3d at 185} jury selection has commenced, when the right to proceed pro se is "severely constricted," such application may be granted in the exercise of the trial court's discretion (McIntyre, 36 NY2d at 17).
Our conclusion is also consistent with federal case law, which treats pro se applications made after the start of jury selection as untimely. The Second Circuit has held that a defendant's motion made "just after the start of jury selection" is "made after the start of trial" (United States v Stevens, 83 F3d 60, 66, 67 [2d Cir 1996]; see also United States v Walker, 142 F3d 103, 108-109 [2d Cir 1998] [motion made after 19 days of voir dire and one day before opening statements was made after the start of trial]). Notably, in Faretta v California, the timeliness of the defendant's request to proceed pro se was not at issue, but the Supreme Court described the request—made "weeks before trial"—as having been made "[w]ell before the date of trial" (422 US 806, 807, 835 [1975]). Based on that broad reference point, federal courts have held, in the context of habeas review, that it was not an unreasonable [*6]application of federal law to deny a request to proceed pro se as untimely where the request was made "as potential jurors were 'on their way up to the courtroom' " (Hill v Curtin, 792 F3d 670, 674, 678-679 [6th Cir 2015]) or after jury selection was nearly complete (Stenson v Lambert, 504 F3d 873, 882, 884 [9th Cir 2007]).
So too here, we hold that, in accordance with McIntyre, a request to represent oneself in a criminal trial is timely where the application to proceed pro se is made before the trial commences. The Criminal Procedure Law defines the commencement of trial as the beginning of jury selection. Where 11 jurors had been selected and sworn as trial jurors before defendant's request to proceed pro se was made, defendant's request was untimely. As a result, there was no legal error in the trial court's determination that the request to represent himself was untimely and in its denial of such request without further inquiry.
Accordingly, the order of the Appellate Division should be reversed, and the case remitted to the Appellate Division for consideration of the facts and issues raised but not determined on the appeal to that Court.

Rivera, J. (dissenting). In this appeal we are asked to reconsider the rule that a defendant's request to proceed pro se is timely if interposed before the prosecutor has begun an opening statement. It has long been established that such requests are timely. Since that rule has proved workable and no reason{**32 NY3d at 186} presents itself to depart from well-settled law, stare decisis counsels decisively in favor of leaving the rule unchanged.
I.
Defendant Raymond Crespo was charged with attempted murder in the second degree, assault in the first degree, and criminal possession of a weapon in the third degree. In the course of proceedings, defendant's relationship with his court-appointed counsel became strained. Six months prior to trial, defendant indicated his dissatisfaction with his attorney's representation and requested new counsel. The court denied this request as well as a subsequent motion for new counsel that defendant made four months later.
On the day jury selection was scheduled to commence, defense counsel moved to withdraw, informing the court that he and the defendant were not communicating and had "zero relationship." Despite this characterization of the attorney-client relationship, the court denied the motion. Defendant also told the court that he did not feel comfortable with his attorney, was having difficulty communicating with him, and did not want to go to trial with him. The court told defendant that it would not appoint new counsel and implored him to speak with his attorney. In response, defendant repeated several times he did not want the attorney representing him and left the courtroom.
On the first day of jury selection, defendant refused to appear. The court asked defense counsel to order a transcript "not [of] the jury selection, but it seems to me that it would be helpful for you to have the minutes of the actual trial, at least for the first couple of days" so that defendant could read it if he wanted. During a recess, defendant appeared and repeated that he did not want to be represented by his assigned counsel. The court responded [*7]that it was now "the eve of trial" and that consequently the court would not assign defendant a different lawyer. Defendant then left.
On the second day of jury selection, defendant stated that he was being "forced to go to court" with his attorney and asked that he be allowed to represent himself. The court denied the request but stated it would consider whether to "allow [defendant] to represent [him]self and go pro se" after jury selection. Defendant responded this was exactly what he wanted to do. The court indicated that while it believed defendant's request to proceed pro se was untimely, it would confirm this understanding. However, as the colloquy continued, defendant reiterated his request and the court denied it outright, reasoning that it{**32 NY3d at 187} was not timely because "we are in the middle of jury selection, [and] we are about to start the trial in less than half an hour." The court did not state that it had confirmed that the request was untimely and did not refer to any case law.
Later, during the People's case-in-chief, after four witnesses had been examined, the prosecutor requested that the court allocute defendant on his request to go pro se. The court refused, concluding that it would be futile at this juncture in the trial. The court further noted that "if [defendant had] asked to go pro se the week before trial, before jury selection, I would have allocuted him, told him about the dangers, let him go pro se. But in this context, no, I am not going to do that. . . . We are in the middle of a trial."
Defense counsel did not call any witnesses and defendant was absent for the entire trial. Nevertheless, the jury acquitted defendant on the top count of attempted murder, and convicted him of the assault and weapons possession counts.
The Appellate Division reversed the conviction and ordered a new trial because defendant had timely and unambiguously requested to proceed pro se prior to the prosecution's opening statement and the court did not conduct the requisite searching inquiry necessary to determine whether a defendant may proceed pro se. The Court expressly rejected the People's claim that, in order to be timely, a request to proceed pro se must be made prior to jury selection (see 144 AD3d 461, 462 [1st Dept 2016], citing People v McIntyre, 36 NY2d 10, 18 [1974]). I find no error in the Court's application of our well-established law and therefore would affirm.
II.
The People's sole argument for reversal is that Supreme Court properly denied defendant's request to represent himself as untimely. They advocate that we should restrict a defendant's right to self-representation by adopting a rule that a motion to proceed pro se is untimely if interposed after the start of jury selection because it avoids disruption.
This is not a new argument. For over a decade the People have advanced this same claim, and now further advocate that the Court has never expressly set the outer limits for timeliness of a motion to proceed pro se. The People have so far failed to persuade any court. That result is unsurprising as, over 40 years ago, this Court in People v McIntyre considered the proper balance between a defendant's constitutional right to self-representation and the State's interests and drew a{**32 NY3d at 188} bright-line rule that a pro se motion is timely so long as interposed "prior to the prosecution's opening statement" (36 NY2d at 18). That holding unambiguously governs the instant case.
A.
This Court held in McIntyre that 
"[a] defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues" (id. at 16-17).
A pro se request is timely under the first prong "when it is asserted before the trial commences," which in McIntyre was defined as "prior to the prosecution's opening statement" (id. at 17, 18). This is how McIntyre has been consistently understood and applied in New York's lower courts (see e.g. People v Herman, 78 AD3d 1686 [4th Dept 2010]; People v Matsumoto, 2 Misc 3d 130[A], 2004 NY Slip Op 50094[U] [App Term, 2d Dept, 2d & 11th Jud Dists 2004]). In fact, McIntyre itself involved a post-jury selection request. As the Court noted, the defendant asked to represent himself "[a]fter the jury had been drawn but not yet impaneled" (36 NY2d at 12). On these facts, the Court held that the defendant's pro se motion was timely "having been interposed prior to the prosecution's opening statement" (id. at 18). This is a clear rule, one easily understood and applied.[FN1] 
[*8]
Contrary to the People's contention, the McIntyre Court had clear, non-statutory reasons for drawing the line where it did. While the Court discussed the need for limitations on the right to self-representation to ensure the orderly administration of justice and fundamental fairness, it concluded that the best way to achieve those goals was to pick a point along a spectrum when "the court may conduct a thorough inquiry thereby averting delay and confusion" (id. at 17). That point is before the trial commences. As the Court has long recognized, the "trial" has {**32 NY3d at 189}various components but at its core it is "the actual trial of the defendant by the jury" (People ex rel. Steckler v Warden of City Prison, 259 NY 430, 432 [1932]). This occurs after a jury has been selected. The McIntyre Court understood this, as in that case the Court chose the prosecutor's opening statement as the proper place to draw the line.
This construction also explains why the McIntyre Court, in announcing its rule, included a string citation to the Criminal Procedure Law, its predecessor Code of Criminal Procedure, and the Court's earlier decision in Steckler v Warden of City Prison (259 NY at 432).[FN2] Those three authorities in harmony {**32 NY3d at 190}stand for the proposition that a [*9]technical definition of "trial" found in a statute must give way to the definition that best gives effect to legislative intent. Under section 388 of the Code of Criminal Procedure, the order of trial was described as follows: "[t]he jury having been impaneled and sworn, the trial must proceed" with "1. [t]he district attorney, or other counsel for the people," opening the case. Although the definition under the CPL might seem different—"[a] jury trial commences with the selection of the jury" (CPL 1.20 [11])—this Court relied on that very definition in People v Ayala, holding that a trial "beg[ins] only after the jury [i]s sworn" (75 NY2d 422, 429 [1990]), which of course remains "prior to the prosecution's opening statement" as the Court held in McIntyre.[FN3] This ends the analysis.[FN4]
The People's reliance on People v Smith (68 NY2d 737 [1986]) and People v Reason (37 NY2d 351 [1975]) is misplaced as in{**32 NY3d at 191} both cases this Court recognized the defendants' mid-jury selection request to proceed pro se. In Smith, the Court held that the defendant's request was timely interposed after the judge addressed the first panel of prospective jurors (68 NY2d at 740-741). In Reason, the defendant requested to represent himself after the prosecutor moved the case to trial and after having observed voir dire and the prosecutor's questioning of prospective jurors (brief for respondent at 11 in People v Reason, 37 NY2d 351 [1975]; 37 NY2d at 360 n 2 [Jasen, J., dissenting]). Thus, there is no support for the People's assertion—and the majority's assumption—that this Court has never adopted the rule that a defendant timely interposes a request for self-representation after jury selection has begun but before the prosecutor's opening statement.[FN5]
[*10]B.
The People's request for us to depart from our long-settled precedent would, in any case, have to overcome well established principles of stare decisis. This is a hurdle the People cannot clear.
"The doctrine of stare decisis provides that once a court has decided a legal issue, subsequent appeals presenting similar facts should be decided in conformity with the earlier decision. Its purpose is to promote efficiency and provide guidance and consistency in future cases by recognizing that legal questions, once settled, should not be reexamined every{**32 NY3d at 192} time they are presented" (People v Bing, 76 NY2d 331, 337-338 [1990]).
In general, "the strong presumption that the law is settled by a particular ruling may be rebutted . . . only in exceptional cases" (People v Taylor, 9 NY3d 129, 149 [2007]), where, for instance, a rule has proved unworkable, creates more questions than it resolves (see id.), or, when seen in "the cold light of logic and experience," "[it] no longer serves the ends of justice" (Policano v Herbert, 7 NY3d 588, 604 [2006, Kaye, Ch. J., dissenting in part]). Considerations of stare decisis require us to balance the stability of the law and the legitimacy of past expectations, on the one hand, against "the lessons of experience and the force of better reasoning" on the other (Burnet v Coronado Oil & Gas Co., 285 US 393, 407-408 [1932, Brandeis, J., dissenting], quoted in Bing, 76 NY2d at 338).
Underlying the doctrine is the important role of the court as a branch of government greater than its members. As the Court has remarked, "[stare decisis] rests upon the principle that a court is an institution, not merely a collection of individuals, and that governing rules of law do not change merely because the personnel of the court changes" (Bing, 76 NY2d at 338).
As we have observed, these considerations weigh differently in different cases and different areas of the law. Legal scholars, including a former Chief Judge of this Court and the author of the McIntyre opinion, have suggested that stare decisis should be at its strongest in matters of criminal law, particularly where extant decisions benefit defendants (see Hon. Sol Wachtler, Stare Decisis and a Changing New York Court of Appeals, 59 St John's L Rev 445, 453 [1985] ["In criminal cases, any change in rule or statutory interpretation that would be detrimental to a defendant should be avoided, and may indeed violate due process"]; see also Robert von Moschzisker, Stare Decisis in Courts of Last Resort, 37 Harv L Rev 409, 418 [1924] ["In the field of criminal law, the doctrine of stare decisis must be rigidly applied to prevent judicial changes which might operate to prejudice materially the rights of an accused"]).
Here, there is no rule that has proved unworkable, created more questions than it resolved or, in "the cold light of logic and experience," "no longer serves the ends of justice" (Policano, 7 NY3d at 604 [Kaye, Ch. J., dissenting in part]). To the contrary, the bright-line rule announced in McIntyre ensures consistency and certainty. Everyone knows when the prosecutor's{**32 NY3d at 193} opening statement commences. The People's rule, now adopted by the majority—that a trial would begin with jury selection—creates ambiguity. Does jury selection begin when the jury is brought into the courtroom? Before or after the jurors are addressed by the judge? If the judge says "welcome," and the defendant then interrupts to interpose a motion to proceed pro se, is the motion now untimely?
[*11]
More fundamentally, the People have not pointed to any change in our criminal legal system since McIntyre was decided that places that decision in question. Instead, the People's argument boils down to what they advocate is a better rule: the last moment when defendant's request would be timely is when jury selection commences. It has long been held, however that this is not enough to overcome stare decisis (see e.g. Dickerson v United States, 530 US 428, 443-444 [2000] [observing, in discussing an argument for overruling Miranda v Arizona (384 US 436 [1966]), that, "(w)hether or not (a court) would agree with (a decision's) reasoning and its resulting rule, were (the court) addressing the issue in the first instance, the principles of stare decisis weigh heavily against overruling" where there is no "special justification" for departing from precedent and where that precedent's "doctrinal underpinnings" have not been "undermined" (internal quotation marks and citations omitted)]).
C.
Apart from stare decisis, the People's request to restrict a defendant's ability to invoke the right to proceed pro se must also overcome the great historical significance of the right to self-representation, and its status as a constitutional right of the first order (see NY Const, art I, § 6; McIntyre, 36 NY2d at 14-15). As the Court explained in McIntyre, "the right to self-representation embodies one of the most cherished ideals of our culture[:] the right of an individual to determine [that individual's] own destiny" (36 NY2d at 14). The magnitude of this right cannot be understated. Even when the choice to go pro se may be harmful to the accused, "respect for individual autonomy requires that [the accused] be allowed to go to jail under [the accused's] own banner if [the accused] so desires and if [the accused] makes the choice 'with eyes open' " (id., quoting United States ex rel. Maldonado v Denno, 348 F2d 12, 15 [2d Cir 1965]).
The Court in McIntyre recognized that this fundamental right to self-representation is "subject to certain restrictions {**32 NY3d at 194}. . . [which] promote the orderly administration of justice and . . . prevent subsequent attack on a verdict claiming a denial of fundamental fairness" (36 NY2d at 17). However, the People misunderstand McIntyre's balancing of those interests. The People claim that the controlling logic of the McIntyre decision was aimed at avoiding disruption. As they argue in their brief, "permitting a defendant to proceed pro se during, or even just before, jury selection typically results in either a delay of the trial or, absent delay, an unprepared defendant trying the case before a confused jury." They claim that the better policy is to draw the line when jury selection commences because so doing avoids the "need to declare a mistrial and 'commence voir dire anew' " and guards against the "risk of juror confusion arising out of the discharge of counsel in the middle of jury selection." Making the deadline for declaring a request to proceed pro se timely earlier would thus "certainly mitigate, if not entirely eliminate 'the potential for obstruction and diversion' " which the People believe motivated the McIntyre Court.
There is nothing to suggest, however, that the People have identified an actual problem facing New York courts. In any case, the Court in McIntyre already weighed and balanced these concerns. The Court appreciated that invoking the right to proceed pro se during jury selection might result in delay. Nevertheless, the Court chose to recognize the timeliness of such a request interposed before the prosecutor's opening. That bright-line rule has worked for over 40 years.[FN6]
{**32 NY3d at 195}Even on their own terms, a rule that the trial begins when jury selection commences is hardly less disruptive. A defendant could invoke the right to self-representation minutes before jury selection begins, at which time the court and counsel would have cleared their calendars and prospective jurors would be on their way to the courtroom or even standing outside in the court hallway. The only possible time saved under this rule is the time actually spent on jury selection, but a defendant or the People may choose not to object and the trial would proceed with jury selection unchanged. Moreover, under this rule, a court may still exercise its discretion and grant an untimely request. It is not certain, then, that the proposed new rule avoids the problem the People identify. Indeed, the closer to the beginning of jury selection the request is interposed, the stronger the case a defendant may have for why the court should grant the request, given that pretrial motion practice would have proceeded with the benefit of counsel and there will be a limited impact on the jury selection process. The reality is that, even midtrial, there is always the possibility for disruption and delay—a witness may be unavailable, the judge or lawyers may get sick, a juror's conduct may be placed in question, or an adjournment may be necessary for some other reason.
III.
To the extent the People rely on People v Antommarchi (80 NY2d 247 [1992]), that case, and other cases from this Court, like People v Anderson (16 NY2d 282 [1965]), have interpreted the components of the "trial" in a way that expands the rights of defendants, not, as the People here advocate, to limit a defendant's constitutional right. This fundamental flaw in the analysis also drives the majority's misguided approach and ultimate conclusion that defendant's request here was untimely.{**32 NY3d at 196}
In Antommarchi, this Court observed that "[d]efendants are entitled to hear questions intended to search out a prospective juror's bias, hostility or predisposition to believe or discredit the testimony of potential witnesses and the venire person's answers so that they have the opportunity to assess the juror's 'facial expressions, demeanor and other [*12]subliminal responses' " (80 NY2d at 250, quoting People v Sloan, 79 NY2d 386, 392 [1992]). To realize that right, the Court was prepared to recognize the impaneling of the jury as a material stage of the trial, simply in order to underline the fact that the defendant was entitled to be present for it. If defendants must be permitted to be present for jury selection, it is certainly no less important for them to be able to decide at that stage that they do not want their attorney to represent them and that they prefer to represent themselves.
As the Court stated clearly in Anderson, quoting Steckler: "We are not bound to accept [a] definition [of 'trial'] if it is not in keeping with the purpose of the statute before us and another sensible meaning may be given to the word" (16 NY2d at 288). This directive carries even greater force where the right at issue is constitutional and we have already given "trial" another sensible meaning. Indeed, it would undermine the certainty of our current rule, and again in the words of Anderson, constitute "an unwarranted departure from the clear public policy of New York as well as a violation of fundamental fairness," to cabin a defendant's autonomy every time the statute changes (id.). What matters is that the defendant is given the opportunity to exercise autonomy when the jury is deciding the defendant's fate—when the jury is constituted and ready to consider the People's arguments and evidence. That is when the defendant risks going to jail "under [the defendant's] own banner" and that is when the request is timely. After this point, the right may still be invoked but may or may not be honored because, as the trial judge below remarked, the "actual trial" has begun.
IV.
Defendant's request to proceed pro se was interposed before the beginning of the prosecutor's opening statement. To reject the request as untimely was clear error by the trial court. Therefore, the Appellate Division properly reversed and ordered a new trial. Forty years of jurisprudence would make this a straightforward case and readily lead us to affirm.{**32 NY3d at 197} Astonishingly, the majority decides otherwise, reaching its conclusion in disregard of the demands of stare decisis and our well-established rule. I dissent.
Judges Stein, Garcia and Scheinkman[FN*] concur; Judge Rivera dissents and votes to affirm in an opinion, in which Judges Fahey and Wilson concur; Judge Feinman taking no part.
Order reversed and case remitted to the Appellate Division, First Department, for consideration of the facts (CPL 470.25 [2] [d]; 470.40 [2] [b]) and issues raised but not determined on the appeal to that Court.

Footnotes

Footnote 1:In particular, defendant was upset, at least in part, about the discovery of certain inculpatory statements he had made in recorded telephone calls while awaiting trial in Rikers Island, and defense counsel's remark to him that, based upon those statements, "there ain't much you can do."

Footnote 2:In one of the recorded telephone calls from Rikers Island, defendant stated that without the complainant the prosecution did not "have a strong case" and that the complainant's failure to come to court was "the only thing that could help [him]." Defendant explained that his strategy was "to take [his] time, to see if that guy gets scared and immigration takes him to hell, back to Mexico or something weird."

Footnote 3:In stating that the motion to proceed pro se, made prior to opening statements, was timely, the McIntyre Court included a "see" citation to the CPL definition of "trial" which had been recently enacted (see 36 NY2d at 18, citing CPL 1.20 [11]). The parties disagree over the precedential import of this one word. Significantly, the question of whether the motion to proceed pro se was timely was not an issue before the McIntyre Court as the trial court did not deny the defendant's motion on that basis. There is no dispute that McIntyre's language indicating that the defendant's request to proceed pro se was timely was in complete accord with the controlling statutory law as it existed at the time of the trial. Although we agree with the dissent that this single word should not be relied upon as determinative, it is reasonable to infer that the Court's reference to the new definition in the CPL was not to simply ignore the new definition, but to signal that the statutory definition of the commencement of the trial had changed since McIntyre's trial. Stated somewhat differently, it would be unreasonable to assume that the Court, by its cursory citation, intended to peremptorily cast aside a recently enacted legislative change in favor of the indefinite perpetuation of the trial classification scheme contained in an archaic statute. Tellingly, in the same citation, McIntyre cited to People ex rel. Steckler v Warden of City Prison, wherein we held that, under the Code of Criminal Procedure, trial begins with opening statements, but further observed that "[w]e are not bound to accept this definition [of the trial] if it is not in keeping with the purpose of the statute before us and another sensible meaning may be given to the word" (259 NY 430, 432 [1932]).

Footnote 4:Contrary to the dissent, we do not view Steckler's interpretation of the Code of Criminal Procedure (rendered in 1932) as having any bearing whatsoever on the legislative intent behind the definition of a jury trial that was adopted in the CPL (see dissenting op at 
188-190). Indeed, the legislative history of the CPL confirms the deliberate intention to change the meaning of the word "trial" as applied to jury trials (see Staff Comment of Temp St Commn on Rev of Penal Law and Crim Code, 1967 Proposed NY CPL 1.20 at 26).

Footnote 5:[2] The issue in Ayala was whether the former testimony of an unavailable witness at the suppression hearing was part of the "trial" for purposes of the definition of trial testimony in CPL 670.10 (75 NY2d at 428-429). It is not. Indeed, when a suppression motion is made prior to trial, "the trial may not be commenced until determination of the motion" (CPL 710.40 [3]; compare People v Miller, 28 NY3d 355 [2016]). Thus, to the extent Ayala could be read as support for a claim that the starting point for the commencement of trial is not jury selection, that statement is dicta (see People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Commrs., 174 NY 417, 447 [1903] ["Principles are not established by what was said, but by what was decided, and what was said is not evidence of what was decided, unless it relates directly to the question presented for decision"]). Nor is it accurate to say that the CPL definition of a jury trial "might seem different" from the Code of Criminal Procedure definition (see dissenting op at 
190). CPL 1.20 (11) plainly sets a different starting point for a jury trial, evidenced in part, as noted above, in its internal distinction between the commencement of jury and nonjury trials.

Footnote 6:We note that, in People v Smith (68 NY2d 737 [1986]), there was disagreement over whether the defendant's request to proceed pro se was untimely. However, the majority held that the request, made "[p]rior to jury selection," was timely (68 NY2d at 738; compare People v King, 27 NY3d 147, 156 [2016]). Once again, the issue of the timeliness of the motion was not paramount as the trial court in Smith had granted the defendant's request to proceed pro se. Similarly, in People v Reason (37 NY2d 351 [1975]), where the issue before the Court was whether there is a distinction between the mental capacity required to stand trial and the ability to conduct one's own defense, the request to proceed pro se was granted. In any event, the dissent's representation that the defendant's request to proceed pro se in Reason was made during voir dire is inaccurate (see dissenting op at 
191). Although the trial court granted the request during voir dire, the record in that case demonstrates that the defendant's request was made before voir dire began (see brief for respondent at 15 in People v Reason, 37 NY2d 351 [1975] [stating that when the defendant "first appeared" before the trial judge "he again announced his wish to proceed pro se" and that these "pre-trial applications satisfied the first requirement of McIntyre"]).

Footnote 1:The majority seeks to minimize the precedential import of this rule, claiming that the timeliness of the defendant's request was not at issue in McIntyre (majority op at 
181). Yet, as the majority recognizes, McIntyre is the "seminal case" (id. at 
178) which set forth the analytical framework for determining whether to grant a defendant's request for self-representation. Not even the People go so far as to suggest, as the majority does, that the rule means other than what it says, nor could they, as it was only by the operation of the rule that the defendant's request in McIntyre was timely.

Footnote 2:The majority speculates that McIntyre's "see" citation to the CPL was intended "to signal that the statutory definition of the commencement of the trial had changed since McIntyre's trial" (majority op at 
181-182 n 3). This attempt at elevating guesswork to rigorous analysis falls flat as it relies on a presumption that the McIntyre Court ignored elementary rules of legal scholarship and rhetoric. If the Court wanted to alert the reader to a change in definition under the CPL the most direct course to achieve that goal would have been to say so in the text, or a footnote. The McIntyre Court did neither. It defies logic to assume that the Court would identify with a one-word citation a significant change in the law, especially one that would necessarily render the first prong of the Court's newly announced rule meaningless for all future cases involving jury trials subject to the CPL.
In its attempt to avoid the most natural and plain reading of the Court's reference, the majority also ignores the recognized use of the introductory signal "see" in legal citations, which was the same at the time of McIntyre as it is today. Under modern standards of legal citation, "see" is used when "the proposition is not directly stated by the cited authority but obviously follows from it" (The Bluebook: A Uniform System of Citation R 1.2 [a] at 58 [Columbia Law Review Association et al., 20th ed 2015]). At the time of the McIntyre decision, the "see" signal was used to refer to "basic source material supporting an opinion or conclusion of either law or fact . . . [and] indicates that the asserted opinion or conclusion will be suggested by an examination of the cited authority" (A Uniform System of Citation R 26.1 at 87 [Harvard Law Review Association et al., 11th ed 1967]). Earlier uses of "see" were likewise intended "to indicate that 'the asserted opinion or conclusion will be suggested by an examination of the cited authority' " (Schmidt v McCarthy, 369 F2d 176, 182 n 18 [DC Cir 1966], quoting A Uniform System of Citation at 85-86 [10th ed 1958]). While the standards of legal citation were, and to some extent remain, far from uniform (see Ira P. Robbins, Semiotics, Analogical Legal Reasoning, and the CF. Citation: Getting Our Signals Uncrossed, 48 Duke LJ 1043, 1043-1044 [1999]; Peter Lushing, A Uniform System of Citation, 67 Colum L Rev 599 [1967] [reviewing the 11th edition of A Uniform System of Citation]), the "see" signal has always indicated support for the proposition it follows, not contradiction. I am confident that the McIntyre Court appreciated the import of using the "see" signal and understood it to mean that the corresponding authority, CPL 1.20 (11), provided support for its finding that the defendant's request to proceed pro se was timely because it was interposed before the prosecutor's opening and as such before the commencement of the trial.
Footnote 3:To reach its preferred conclusion as to when a trial begins, the majority misconstrues the CPL's text. That under CPL 1.20 (11) a jury trial "commences with the selection of the jury," does not mean that the trial starts the moment the first prospective juror walks into the courtroom or a first juror is sworn. Rather, it "commences" after the entire jury has been selected, the same way that a race that "commences with" the firing of a starter pistol starts after the gun has gone off. This is well understood by practitioners. An attorney is engaged in the process of picking a jury through the selection of individual jurors—which includes voir dire and the exercise of for cause and peremptory challenges—but an attorney does not pick a jury until after all jurors have been empaneled and sworn in. This general understanding that jury selection is completed by the swearing in of all the jurors is further evidenced by the Criminal Procedure Law which refers to a continuing process of jury selection completed only upon the swearing in of the final juror (see CPL 270.15 [3] ["The process of jury selection as prescribed herein shall continue until twelve persons are selected and sworn as trial jurors . . . (and) (i)f before twelve jurors are sworn, a juror already sworn becomes unable to serve by reason of illness or other incapacity, the court must discharge (such juror) and the selection of the trial jury must be completed in the manner prescribed in this section" (emphasis added)]).
No more persuasive is the majority's attempt to discount as dicta the clear statement in Ayala that the trial begins after jury selection (majority op at 
183-184 n 5). Ayala restated an existing rule, citing CPL 1.20 (11) (75 NY2d at 429). The majority may find the decision inconvenient and wish the Court had said otherwise, but Ayala confirms that this Court has previously and uniformly interpreted the CPL to mark the commencement of a jury trial after the jury itself has been selected and its members sworn to serve in judgment of a defendant.
Footnote 4:Any suggestion by the majority that defendant's requests for new counsel and to proceed pro se were intended to delay proceedings are speculative and irrelevant to the analysis (majority op at 
179 n 1, 179). The trial court made no findings as to defendant's intent, and the Appellate Division specifically could not consider the third prong of McIntyre—whether defendant's conduct was "calculated to undermine, upset or unreasonably delay the progress of the trial" (McIntyre, 36 NY2d at 18; Crespo, 144 AD3d at 462).

Footnote 5:The majority's characterization of the procedural posture of the defendant's request to the trial court in Reason is at odds with Judge Jasen's description that the defendant sought to represent himself after jury selection had commenced (majority op at 
184 n 6; Reason, 37 NY2d at 359, 360 n 2 [Jasen, J., dissenting]). Nonetheless, the majority relies on an excerpt from the People's brief in Reason concerning a pretrial appearance, which is not mentioned in the defendant's brief or in the majority or dissenting opinions. Not even the People go so far as the majority to argue that the defendant in Reason made a timely unequivocal request to proceed pro se before his appearance on the trial date. Instead, the People here argue, based on their interpretation of portions of the trial transcript, that the defendant timely interposed his request on the first day of trial before jury selection commenced. However, even that interpretation is at odds with the language in the opinion in Reason. In any case, and regardless of what the majority here argues, the request in Reason was treated at the time, by the Court, as having been interposed mid-jury selection.

Footnote 6:Any possible disruptive effect on the system writ large is less today than it would have been in 1974 when McIntyre was decided. It is now well-documented that criminal jury trials are becoming increasingly rare in both the federal and state courts (see Missouri v Frye, 566 US 134, 143-144 [2012] ["Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas"], citing Dept of Justice, Bureau of Justice Statistics, Sourcebook of Criminal Justice Statistics Online, Table 5.22.2009, available at http://www.albany.edu/sourcebook/pdf/t5222009.pdf; Hon. Robert J. Conrad & Katy L. Clements, The Vanishing Criminal Jury Trial: From Trial Judges to Sentencing Judges, 86 Geo Wash L Rev 99, 104-105 and n 25 [2018] [noting that from 2006 to 2016 the number of federal criminal jury trials fell by 47% and that a similar trend occurred at the state level]; Benjamin Weiser, Trial by Jury, a Hallowed American Right, is Vanishing, NY Times, Aug. 7, 2016). The Supreme Court has commented that the modern criminal justice system is "for the most part a system of pleas, not a system of trials" (Frye, 566 US at 143, quoting Lafler v Cooper, 566 US 156, 170 [2012]), such that "the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant" (Frye, 566 US at 144). The truth of the matter is that the vast majority of criminal cases in this state are now resolved by plea, not jury trial, and the instances where, as here, a defendant requests to proceed pro se during jury selection are few and far between (see People v Tiger, 
32 NY3d 91 [2018, Wilson, J., dissenting] ["In New York State in 2016, less than three percent of nearly 50,000 criminal dispositions went to trial"], citing National Center for State Courts, Court Statistics Project, 2016 Gen. Jurisdiction Criminal Jury Trials and Rates, New York, http://www.ncsc.org/Sitecore/Content/Microsites/PopUp/Home/CSP/CSP_Intro; People v Monk, 21 NY3d 27, 34 [2013, Rivera, J., dissenting] ["It is an undeniable reality of our current criminal justice system that the majority of defendants will be sentenced in accordance with a negotiated plea"]).

Footnote *:Designated pursuant to NY Constitution, article VI, § 2.