Matter of Ford v N.Y.S. Dept. of Corr. & Community Supervision (2019 NY Slip Op 07128)





Matter of Ford v N.Y.S. Dept. of Corr. & Community Supervision


2019 NY Slip Op 07128


Decided on October 03, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 03, 2019

528233

[*1]In the Matter of Kavon Ford, Petitioner,
v
N.Y.S. Department of Corrections and Community Supervision, Respondent.

Calendar Date: September 9, 2019

Before: Lynch, J.P., Clark, Devine and Pritzker, JJ.


Kavon Ford, Yonkers, petitioner pro se.
Letitia James, Attorney General, Albany (Frank Brady of counsel), for respondent.



Lynch, J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of the Board of Parole, among other things, finding that petitioner had violated the conditions of his postrelease supervision and ordered that he be held to his maximum expiration date.
In 2015, petitioner was convicted of attempted gang assault in the first degree, attempted robbery in the second degree (two counts) and other crimes stemming from three indictments. He was sentenced to various concurrent prison terms, which were followed by three years of postrelease supervision (hereinafter PRS). Petitioner was released to PRS on March 3, 2016, subject to specified conditions of release. After he tested positive for alcohol consumption in violation of those conditions, he entered a written agreement with special conditions of release on July 25, 2017 agreeing to complete a 45-day parole diversion program (hereinafter the program) to address substance abuse, in lieu of proceeding with a charge of violating PRS. On August 18, 2017, petitioner was discharged from the program for misbehavior, taken into custody and charged, in a second amended violation report, with four violations of the conditions of his release, including charge one relating to his failure to successfully complete the program. Following a final revocation hearing (see Executive Law § 259-i [3] [f]), an Administrative Law Judge (hereinafter ALJ) acting on behalf of the Board of Parole sustained charge one,[FN1] classified petitioner as a category 1 violator, and ordered that he be held until his maximum expiration date. The determination was upheld on administrative appeal, and this CPLR article 78 proceeding ensued.
We confirm. To the extent that petitioner challenges the merits of the determination, "a [PRS] revocation decision will be upheld so long as the procedural requirements were followed and there is evidence which, if credited, would support such determination" (Matter of Davis v Laclair, 165 AD3d 1367, 1368 [2018] [internal quotation marks and citations omitted]). The charged PRS violation must be supported by a preponderance of the evidence (see Executive Law § 259—i [3] [f] [viii]; Penal Law § 70.45 [4]). The detailed testimony of petitioner's parole officer and the program correction officer involved in the incident that led to petitioner's discharge and the corresponding documentation provide substantial evidence to support the finding that petitioner was discharged from — and therefore failed to complete — the program due to his misconduct. The program correction officer testified that petitioner appeared at his desk demanding to be let into a group meeting, but refused to produce his identification badge; petitioner then made threats, insulted the officer, ignored repeated direct orders and followed and approached the officer, crossing a line on the floor that program participants were directed to stay behind. As a result, he was discharged from the program prior to completion, violating the special conditions of his release to which he agreed in 2017, as well as condition 13 of the original conditions. With regard to petitioner's challenge to the truthfulness of the witnesses' testimony, "it is within the province of the Board [of Parole] to resolve issues of credibility, and to determine the relative weight to be assigned to the evidence" (Matter of Davis v Laclair, 165 AD3d at 1368 [internal quotation marks and citations omitted]).
Petitioner's procedural claims similarly lack merit. Petitioner argues that he was deprived of the constitutional right to represent himself, including the right to cross-examine and confront witnesses, when the ALJ denied his request to proceed pro se at the final revocation hearing and to discharge his assigned counsel. We are mindful that a defendant in a criminal case has a right to self-representation "'provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues'" (People v Silburn, 31 NY3d 144, 150 [2018], quoting People v McIntyre, 36 NY2d 10, 17 [1974]). Assuming, without deciding, that this right applies equally in final PRS revocation proceedings that may result in further incarceration, we find that the ALJ did not err in refusing petitioner's request because it was untimely. An application to proceed pro se must be made "'before the trial commences'" (People v Crespo, 32 NY3d 176, 181 [2018], quoting People v McIntyre, 36 NY2d at 17), which, in a nonjury setting, is defined as "with the first opening address, if there be any, and, if not, when the first witness is sworn, and includes all further proceedings through the rendition of a verdict" (CPL 1.20 [11]; see People v Crespo, 32 NY3d at 182). The record reflects that petitioner's request to proceed pro se was first made after he and the parole revocation specialist were sworn in as witnesses at the start of the final revocation hearing and, therefore, was not timely.[FN2] Moreover, petitioner did not request that substitute counsel be assigned, and the record does not reflect that he established good cause for such relief (see People v Smith, 18 NY3d 588, 592 [2012]; People v Lanier, 158 AD3d 895, 896 [2018]).[FN3]
As petitioner was represented by assigned counsel at the hearing, he was not entitled to hybrid representation or to "participate personally in the proceedings" (People v Rodriguez, 95 NY2d 497, 501 [2000]). After his untimely request was denied, petitioner nonetheless repeatedly objected, was argumentative, refused to permit his attorney to proceed and interrupted the ALJ. Petitioner disregarded numerous warnings to speak through his attorney and that he would be removed if he failed to abide by the rules and procedure outlined for the hearing. Under these circumstances, we perceive no abuse of discretion in the ALJ's removal of petitioner from the hearing following his protracted obstructionist behavior (see Matter of Sanders v Travis, 10 AD3d 815, 816 [2004]; see also CPL 260.20; Matter of Joseph v Polizzi, 167 AD3d 1207, 1208 [2018], lv denied 33 NY3d 903 [2019]; Matter of Marie v Goord, 34 AD3d 1019, 1019 [2006]). When petitioner was later readmitted to the hearing to testify, he again refused to cooperate when his attorney posed questions and urged him to testify, continually interrupted the proceedings, and declined the ALJ's offer to permit him to testify in a narrative fashion. As petitioner was repeatedly advised of how the hearing would proceed and the consequences of his disruptive conduct and continued to obstruct all efforts to conduct the proceedings, he was again properly removed. Petitioner's attorney, who had represented him during prehearing conferences and plea discussions, adequately represented him in absentia and cross-examined the witnesses. Petitioner's claim that he was denied his rights at the hearing is without merit, as his absence and the related consequences were attributable to his own conduct.
Petitioner further claims that the hearing was not held at a location that was convenient for him to call witnesses (see Executive Law § 259-i [3] [e] [1]). Although this issue was briefly raised at an earlier proceeding, it was not raised at the final revocation hearing, and petitioner did not thereafter request that any witnesses be called. Consequently, no error is apparent. Petitioner's remaining procedural claims, to the extent that they are preserved, also lack merit
Finally, petitioner has not demonstrated that his time assessment is erroneous. By statute, when petitioner was released to PRS on March 3, 2016, this interrupted his maximum, 3½-year sentence, and the remaining balance of that sentence —six months and five days — was held in abeyance until he completed PRS or was returned to respondent's custody as a PRS violator, whichever occurred earlier (see Penal Law § 70.45 [5] [a]; see also People v Williams, 19 NY3d 100, 104 [2012]; People ex rel. Hines v Bradt, 86 AD3d 678, 679 [2011]). Contrary to his claim, he did not serve the balance of his sentence while on PRS, as that sentence was interrupted when he was released to PRS, and the balance of his sentence was not "credited with and diminished by" the time spent on PRS, given that he did not successfully complete PRS (Penal Law § 70.45 [5] [b]).[FN4] When petitioner was returned to respondent's custody on January 5, 2018, he owed — after jail time credit for time served during the PRS violation proceedings — one month and 15 days toward the maximum terms of his sentence; once he had served his sentence to the maximum expiration date (February 20, 2018), he began serving the balance of his PRS, for which the maximum expiration date is September 5, 2019.
Clark, Devine and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: The remaining charges were withdrawn.

Footnote 2: Petitioner contends that, during off-the-record discussions prior to the final revocation hearing, the ALJ assured him that he would be able to speak on his own behalf at the hearing. This claim is belied by the record, which reflects that the ALJ advised him at the start of the hearing that, as he had advised him off the record, "[a]ll arguments are to be made through your lawyer."

Footnote 3: Although assigned counsel made a record of petitioner's request to proceed pro se, he did not join in that request, ask to be removed or argue that good cause for substitute counsel was present.

Footnote 4: Petitioner's reliance on Penal Law § 70.40 (2) is misplaced as he was serving concurrent terms of imprisonment, the maximum of which was a 3½-year determinate sentence, not a definite sentence.