People v Lewis (2025 NY Slip Op 03011)

People v Lewis

2025 NY Slip Op 03011

Decided on May 20, 2025

Court of Appeals

Rivera, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 20, 2025

No. 48 

[*1]The People & c., Respondent,
v
Laquawn Lewis, Appellant.

David Fitzmaurice, for appellant. 
Charles T. Pollak, for respondent.

RIVERA, J.:
A defendant has a constitutional right to proceed pro se (see US Const Amend VI; NY Const, art I, § 6; see also CPL 170.10 [6], 180.10 [5], 210.15 [5] [codifying a defendant's constitutional right to self-representation]). Defendant invoked that right when he informed Supreme Court that he "would like to represent [him]self" at his upcoming trial. People v McIntyre (36 NY2d 10 [1974]) and its progeny required that the court make a searching inquiry into defendant's unequivocal and timely request to proceed pro se, to determine whether that request was knowing, voluntary, and intelligent. Contrary to that rule, the court immediately denied defendant's request without inquiry, and it expressly refused to consider any further request until the day of trial. The court's failure to inquire into defendant's request violated his constitutional right to self-representation. Therefore, we reverse and grant defendant a new trial.
I.
In the months leading up to his trial on charges of attempted murder, robbery, assault, and obstruction of governmental administration, defendant Laquawn Lewis informed the court of his dissatisfaction with appointed counsel. Defendant also filed various pro se motions, including a writ of habeas corpus, a request for dismissal of the indictment on speedy trial grounds, and at least one time, a request for new appointed counsel.[FN1] Eventually, defendant's dissatisfaction with appointed counsel reached the point where he asserted to the court that he preferred to represent himself.
On June 4, 2018, the parties appeared for trial. Before jury selection, defendant made an application for defense counsel to be relieved due to a "conflict of interest." The court rejected defendant's [*2]claim, and the case proceeded to jury selection. After the court dismissed the prospective jurors for the day, defendant spoke on the record again. He complained that defense counsel had not provided him with discovery, including the complainant's medical records, that he needed to prepare for trial. The court responded that defense counsel would provide him with the requested discovery. Before defendant could speak further, the court stated that it would only hear from defense counsel. This colloquy followed:
"THE DEFENDANT: I'm going to go cocounsel.
THE COURT: I can't hear you.
THE DEFENDANT: Cocounsel. I'm going to go cocounsel.
THE COURT: Cocounsel?
THE DEFENDANT: Yes.
THE COURT: What is that?
THE DEFENDANT: Meaning I'm going to represent myself in this case.
THE COURT: You mean pro se.
THE DEFENDANT: Yes. I will be going pro se at trial. I will be representing myself acting as my own.
THE COURT: You made no application before me.
THE DEFENDANT: I never said I wanted a trial by jurors. I never told this individual that I wanted a trial by jurors.
THE COURT: You know, Mr. Lewis, I'm assuming now you're trying to play games with this court. . . . I'll continue with this trial. If you want to speak to [defense counsel] about certain issues, I'll hear [defense counsel] tomorrow morning."
The following morning, the court invited defendant to raise any issues before proceeding with jury selection. Defendant asserted again that he did not want defense counsel to represent him, alleging that counsel was ineffective, had a conflict of interest, and was not working on his behalf. The court only responded, "[o]kay. Nicely done," and continued the proceeding. Later that day, the prosecution extended a recommendation that defendant plead guilty to the indictment in exchange for a sentence of 16 years' incarceration and five years' post-release supervision. This recommendation was based on an assumption by the prosecution, defense counsel, and the court that if defendant were convicted at trial, he would face a potential life sentence as a persistent felony offender (see PL § 70.10 [2]). Although defendant attempted to contest his designation as a persistent felony offender, the court interrupted to explain that "it's only relevant if [he's] convicted and the [prosecution] files persistent papers," and then resumed jury selection. On the following day, defendant pleaded guilty to the indictment in exchange for the recommend sentence.
In fact, based on his record, defendant was correct that he could not have been sentenced as a persistent felony offender if convicted at trial. Eventually, defense counsel realized his error. When the parties appeared in front of the same judge on July 24, 2018, defense counsel moved to withdraw defendant's plea on the ground of this mistake, noting that defendant pleaded guilty to avoid a potential life sentence. The prosecution consented to defense counsel's motion. Defendant then made another request to proceed pro se:
"[DEFENDANT]: [I]f I'm taking this plea back, I don't need [defense counsel] representing me, if I'm going to go to trial, that's what it's looking like. So I take my chances with a new attorney because this attorney is ineffective and I've got paperwork for you.
THE COURT: I understand what you're saying. So how long will it take you to hire a lawyer?
[DEFENDANT]: I would represent myself.
THE COURT: Sorry?
[DEFENDANT]: I would like to represent myself.
THE COURT: You're going to represent yourself?
[DEFENDANT]: Yes.
THE COURT: I'll deal with that. [Defense counsel] is on the case until you can hire another attorney. If you choose to go pro se at the time of trial, I'll entertain your application at that point, but [defense counsel], you're still on the case."
The court vacated defendant's guilty plea and adjourned the case for trial.
On September 24, 2018, the day before jury selection was scheduled to begin, defense counsel made an application to be relieved, again to the same judge from prior proceedings:
"[DEFENSE COUNSEL]: Judge, I have to make an application to be relieved. I know I've made other applications in the past. I did a video conference with [defendant] on Friday. Not to belabor the point, but he did threaten to kill me during our video conference, so on those grounds, Judge, I'd ask to be relieved.
THE COURT: All right. [Defense counsel], I know you're very familiar with this case. You've had the case for quite sometime [sic]. In fact, if memory served me correct, we picked a jury on this case before your client entered into a plea of guilty. We subsequently gave your client his plea back based upon your application, and I know that you're ready to proceed now. Passions do run high when a trial's about to start, and things are said, but your application to be relieved is most respectfully denied. I want to move this case, and move this case expeditiously, so your application is denied."
The court subsequently addressed defendant directly and explained that it would "give [him] the benefit of the doubt—that if [he] in any way, shape or form ha[d] threatened [defense counsel], [he] didn't mean it." However, the next morning, the court restated defense counsel's request to be relieved based on defendant's threat, and it then took a statement on the record from a court officer who claimed that defendant had threatened him earlier that day. Based on the two reported threats, the court ordered defendant handcuffed during trial, but it did not revisit defense counsel's request to be relieved.
Defendant proceeded to trial represented by defense counsel. The jury acquitted defendant of attempted murder, but it convicted him of all other offenses. The court sentenced defendant to 25 years' incarceration and 5 years' post release supervision—the maximum legal sentence. On appeal, defendant argued, in part, that the court erred by denying without inquiry his unequivocal requests to proceed pro se, and that the evidence at trial was legally insufficient to show that he caused the complainant to suffer a serious physical injury, which was a necessary element of one robbery count and two assault counts.
The Appellate Division affirmed the judgment (218 AD3d 493 [2d Dept 2023]). The court held that the lower court did not violate defendant's right to self-representation, because "his requests to proceed pro se, which were made in the context of his claim of dissatisfaction with counsel, were not unequivocal" (id. at 493 [internal citations omitted]). The Appellate Division also concluded that defendant's legal sufficiency argument was unpreserved, and in any event, without merit (id. [internal citations and quotation marks omitted]). A Judge of this Court granted defendant leave to appeal (40 NY3d 1081 [2023]).
II.
Defendant renews his claims that Supreme Court violated his constitutional right to self-representation by refusing to entertain his unequivocal requests to proceed pro se, and that the evidence was legally insufficient to establish that he caused the complainant to suffer a serious physical injury. He requests a new trial or, should the Court conclude that his right to self-representation was not violated, that his convictions of offenses that require proof of serious physical injury be reduced to lesser included offenses that lack this element.[FN2] The prosecution counters, first, that defendant's requests to proceed pro se were equivocal when considered in broader context and did not require the court to make any inquiry, and that he abandoned his request by failing to raise it on the day of trial, as the court stated he could. Second, the prosecution argues that defendant's legal sufficiency argument is unpreserved and meritless.
We conclude that the court violated defendant's right to self-representation when it denied, without the requisite inquiry, his unequivocal request to proceed pro se. Defendant's legal sufficiency argument is unpreserved. Thus, we remit this matter for a new trial on the offenses for which defendant was convicted.
"[T]he right to self-representation embodies one of the most cherished ideals of our culture: the right of an individual to determine [their] own destiny" (McIntyre, 36 NY2d at 14). Both the United States Supreme Court and this Court have recognized the right as constitutionally protected (see Faretta v California, 422 US 806, 819 [1975] ["Although not stated in the (Sixth) Amendment in so many words, the right to self-representation—to make one's own defense personally—is . . . necessarily implied by the structure of the Amendment"]; McIntyre, 36 NY2d at 15 ["(T)he New York State Constitution and criminal procedure statute clearly recognize th(e) right" to proceed pro se"]).
The Court has long understood that defendants may assert their right to self-representation for a variety of reasons, including dissatisfaction with counsel (McIntyre, 36 NY2d at 16). Other motivations are less virtuous, and a declaration to proceed pro se may be a means to delay the proceedings and obstruct the judicial process (id. at 18). "In light of the manifold and conflicting principles permeating the assertion of [a defendant's] right to defend pro se, . . . it is not absolute but subject to certain restrictions. Such limitations must be implemented in order to promote the orderly administration of justice and to prevent subsequent attack on a verdict claiming a denial of fundamental fairness" (id. at 16-17). Under McIntyre's three-pronged test, a defendant may proceed pro se if "(1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in [*3]conduct which would prevent the fair and orderly exposition of the issues" (id. at 17).[FN3] As it is uncontested that the court did not make the inquiry required by prong two, the sole question on appeal is whether any of defendant's requests to proceed pro se were timely and unequivocal.
III.
We conclude from the record that defendant made an unequivocal request to proceed pro se after he moved to withdraw his guilty plea on July 24, 2018.[FN4] Defendant stated that he was "taking his plea back" and didn't need counsel, whom he believed was ineffective, to represent him at trial. He asserted that he would take his chances with a new attorney, and when the court asked how long defendant needed to hire one, defendant responded that he "would represent" himself. When the court appeared not to understand, defendant repeated that he "would like to represent" himself. The court then asked, "You're going to represent yourself?" Defendant did not mince words and responded, simply, "yes." There is no other plausible reading of this colloquy than that defendant twice requested to represent himself, and in direct response to the court's question of whether he would represent himself at trial, answered in the simplest and most direct way with a single "yes."
The dissent's conclusion that defendant's statements were equivocal when placed in broader context, because they reflect his dissatisfaction with counsel and not a genuine interest in self-representation (see dissenting op at 9-10), is not only belied by the record, but also unsupported by our precedent. Indeed, the cases cited by the dissent are distinguishable (see id. at 8), and none of them alter the straightforward rule from McIntyre that a court must inquire into a timely and unequivocal request to proceed pro se.
In People v Gillian, the defendant "moved in writing for reassignment of counsel or, in the alternative, the opportunity to proceed pro se," after he previously informed the court that he wanted to proceed pro se based on dissatisfaction with defense counsel (8 NY3d 85, 87 [2006]). The court granted the defendant's primary request and appointed new counsel (id. at 88). The defendant expressed no "dissatisfaction with the appointment and remained silent thereafter" (id.). The Court rejected the defendant's claim on appeal that his right to self-representation was violated, explaining that while the defendant's "conditioning of his request for new counsel with a request for self-representation did not necessarily render the latter request equivocal," the "defendant's initial requests to proceed pro se were made in the alternative; he sought to represent himself only because [the court] refused to replace the first assigned counsel who had displeased him" (id. at 88). Critically, when the court granted the defendant's request and appointed new counsel, the defendant made no further request to proceed pro se, meaning "the issue of self-representation was closed, with [the] defendant seemingly satisfied with that appointment" (id. [internal citations and quotation marks omitted]). In contrast, defendant, in this case, did not ask to proceed pro se as an alternative to receiving new counsel, nor did he leverage his right of self-representation in an [*4]attempt to compel the court to appoint another lawyer. Instead, defendant made a standalone request to proceed pro se.
People v LaValle (3 NY3d 88 [2004]) also does not support the dissent's conclusion (see dissenting op at 8). The defendant in LaValle had made repeated complaints against his two lawyers on the day of jury selection (see id. at 104). The court determined that the defendant's concerns with defense counsel were based on a disagreement over trial strategy (id. at 105). When the defendant again requested dismissal of defense counsel, and that the court permit him to represent himself, he explained that he could not follow defense counsels' trial strategy and accordingly, " '[t]he only thing I see and that's my last option is to represent myself, not that I want to, I don't know [anything] about the law, but at least I have a chance to prove my innocence' " (id.). In response to the court's warnings about the perils of self-representation, the defendant requested that the court consider appointing new lawyers if it was going to deny his request to proceed pro se (id.).
Thus, the defendant in LaValle made clear that he did not wish to proceed pro se, and like the defendant in Gillian, his request was couched as a means to secure new counsel. The Court considered relevant that the defendant "gave the impression that he was not committed to self-representation," that "he was understandably hesitant considering the daunting task of undertaking self-representation in a capital case," that his request was "conditional" to whether the court "forced him to go along with the strategy of his attorneys," that he "stated that he saw self-representation as his last option," and finally, "[w]hen [the] defendant mentioned self-representation for the last time, he again couched it as a hypothetical, adding the request for new lawyers as an alternative" (3 NY3d at 106). The LaValle Court contrasted the defendant's equivocal and hesitant statements about proceeding pro se with the following unequivocal statements made by a defendant in a separate case: "I will represent myself," and "it's . . . my intention[ ] now to go pro se. Before I wanted to have an attorney, but I can't afford a private attorney. That's why I'm going pro se" (3 NY3d at 106-107, citing Williams v Bartlett, 44 F3d 95, 97-98 [2d Cir 1994] [internal quotation marks omitted]). As in that case, defendant here did not hesitate, use any equivocal language, or state anything comparable to "my last option is to represent myself, not that I want to." And when the court summarily denied defendant's request to proceed pro se, defendant did not resort to asking for new counsel as an alternative.
Nor does People v Payton (45 NY2d 300 [1978], revd on other grounds, 445 US 573 [1980]) support the dissent's "context" rationale (see dissenting op at 8). The defendant in Payton made multiple requests for adjournments and other motions, which the Court concluded "overshadowed" his request to proceed pro se (id. at 314). Accordingly, the defendant did not "demonstrate an actual fixed intention and desire to proceed without professional assistance in his defense" (id.) In plain contrast, defendant made his request immediately after he moved to withdraw the guilty plea that he only made because of defense counsel's erroneous assumption about his persistent felony offender status—which defendant had contested, to no avail. Thus, defendant had reason to seek dismissal of defense counsel and rely on his own ability to present a defense at his upcoming trial. He communicated that desire clearly and succinctly.[FN5]
This appeal is also distinguishable from People v Duarte (37 NY3d 1218 [2022]). In that case, immediately after the court denied the defendant's request for counsel to be relieved, and just as the court commenced a pretrial suppression hearing, defendant stated that he "would love to go pro se" (id. at 1220 [Rivera, J., dissenting]). The court did not respond, and it instead asked the prosecution to clarify the scope of the hearing and call their first witness (id.). To the extent that the court's lack of response indicated that it did not consider the defendant's statement sufficiently unequivocal, there was no such silence here—the court's substantive response to defendant showed that it believed he made an unequivocal request. After defendant twice asserted he wanted to represent himself, the court asked rhetorically, "[y]ou're going to represent yourself?" Defendant answered, "[y]es." The court responded that it would "deal with that" and immediately denied defendant's request, instructed defense counsel to continue his representation, and informed defendant that it would not consider any other request to proceed pro se until trial. Defendant's statement was a request to proceed pro se, and the court understood as much. This record belies the dissent's claim that the court "did not view defendant's request as genuine" (dissenting op at 10). The court understood that defendant made an application that required resolution. Despite this recognition, the court's actions fell short of what the federal and state constitutions require. Once defendant invoked his right to self-representation, the court's duty was clear: ensure that defendant's waiver of counsel was "made competently, intelligently, and voluntarily" (McIntyre, 36 NY2d at 17).[FN6]
We reject the prosecution's additional argument that defendant "abandoned" his request to proceed pro se when he did not make a new application on the morning of trial, months later, as the court instructed. McIntyre plainly requires only a single unequivocal and timely request to trigger the court's duty to inquire (36 NY2d at 17). Here, the court told defendant he could make another application at trial, which commenced months later. But waiting until the morning of trial would be too late for defendant to prepare his own defense, especially since the court required defense counsel to continue representation. Defendant's only option if he desired to make a new application would be to seek an adjournment and further prolong his nearly two-year pretrial incarceration—a request that the court signaled it would not be amenable to when, the day before, it summarily denied defense counsel's request to be relieved because it wanted to move the case "expeditiously."
As Justice Thurgood Marshall explained, unnecessary delay in considering a defendant's unequivocal request to proceed pro se fails to protect the right to self-representation:
"Delay in holding a hearing after the right [to self-representation] is unequivocally asserted undermines that right by forcing the accused to proceed with counsel in whom [they] ha[ve] no confidence and whom [they] may [*5]distrust. For that reason, a post hoc effort to construe as subsequently ambiguous a clear assertion of a desire to proceed on one's own . . . contravenes the right. It encourages courts to leave a [request] pending, in the hope that the request will eventually be construed as ambiguous" (Raulerson v Wainwright, 469 US 966, 970 [1984] [Marshall, J., dissenting]).[FN7]
Moreover, as this Court noted in McIntyre, when a defendant makes a request to proceed pro se "[p]rior to the commencement of trial, the potential for obstruction and diversion is minimal," and a court "may conduct a thorough inquiry thereby averting delay and confusion" (36 NY2d at 17). Put another way, the constitutional right to self-representation does not tolerate a court's unjustifiable delay in responding to a defendant's unequivocal request to proceed pro se.
Lastly, we are unpersuaded by the prosecution's argument that the court properly considered defendant's request as inauthentic and merely a delay tactic, given the court's prior experience with defendant during other pretrial proceedings. It is true that when defendant made his first request to proceed pro se on June 4, 2018, the court believed he was "playing games with th[e] court." However, the court made no such statement in response to defendant's request on July 28, 2018, and instead "deal[t] with it" by rejecting the request and refusing to consider any other request until trial. The court had no authority to impose a requirement for repeated invocations of the right to self-representation before it would properly consider them. Nor may the court, as the prosecution argues, skip the inquiry entirely based on assumptions about a defendant's motive for making an unequivocal request. This position means that a court could decide, without inquiry, that a defendant's request to proceed pro se is equivocal because it is either not a knowing, voluntary, and intelligent waiver, or because a court assumes it is motivated by an intent to prevent the fair and orderly exposition of the issues. The McIntyre Court rejected what is essentially this collapse of the three prongs of the analysis into one. Instead, "[w]here a court feels that the motion is a disingenuous attempt to subvert the overall purpose of the trial (as may well have been the case here), the proper procedure is to conduct a dispassionate inquiry into the pertinent factors." As in McIntyre, "here the trial court denied the motion without eliciting the information which might have warranted denial [*6]of the motion" (36 NY2d at 19).[FN8] The court's failure to inquire into defendant's unequivocal request to proceed pro se violated his right to self-representation and, accordingly, defendant is entitled to a new trial.[FN9]
IV.
Defendant's additional claim that the evidence was legally insufficient to show that he caused the complainant to suffer serious physical injury, requiring reduction of several counts of conviction to lesser included offenses, is unpreserved. At trial, defense counsel only made a general and conclusory legal sufficiency argument that was not directed at this specific error (see People v Gray, 86 NY2d 10, 20 [1995]), and the court had not previously rendered a ruling adverse to defendant on this issue (see People v Finch, 23 NY3d 408, 412 [2014] ["Having received an adverse ruling, (the) defendant did not specifically urge the same theory again in support of his motion to dismiss for insufficiency at trial. But he did not have to: once is enough"]). Because we order a new trial on other grounds, we need not consider defendant's related claim that defense counsel was ineffective for, among other reasons, failing to preserve defendant's legal sufficiency claim.
Accordingly, the Appellate Division's order should be reversed and a new trial ordered.

SINGAS, J. (dissenting):

I agree with the majority that defendant said the words "I would like to represent myself." I cannot agree, however, that, considered in context, these words expressed any sincere desire to forgo his right to counsel and act as his own attorney. Far from it. The record clearly demonstrates that defendant's statement was prompted by his dissatisfaction with yet another appointed attorney—his third—and was embedded within a litany of extraneous and unrelated requests, evidently designed to obstruct his criminal proceedings. We have long held that only unequivocal (i.e., clear, genuine, and unconditional) requests for self-representation merit a trial court's inquiry, and that courts must consider the circumstances motivating that request when assessing its seriousness. Because the majority spurns this established and practical approach, instead giving talismanic significance to words divorced from their context, and because it ignores the trial court's vital role in evaluating the equivocality of such requests, I dissent.
I.
As captured on surveillance video, defendant followed the victim out of a bodega and punched his head from behind with such force that the victim fell to the ground. Defendant stole money from the victim's pockets and, wearing boots, repeatedly kicked and stomped on the victim's head. Defendant walked away while the victim lay on the sidewalk, appearing to convulse. He briefly returned, counting the stolen money in his hand, and yelled at the seemingly unconscious victim. Defendant left again. Approximately two minutes later, while the victim was still lying motionless on the sidewalk, he returned and stomped on the victim's head three more times. The victim was taken to a local hospital, where he remained for several months to treat the traumatic brain injury that defendant inflicted. Defendant was later arrested and refused to be fingerprinted, requiring a force order and several law enforcement officers to subdue him to obtain his fingerprints. He was indicted on charges of attempted murder in the second degree, obstructing governmental administration in the second degree, and several other crimes related to the assault.
Some background in the trial proceedings is important to frame the issue before the Court. In October 2017, prior to a Rodriguez hearing, the court asked defendant if he was interested in a plea offer. In response, defendant complained that he "never saw this footage that they allegedly had me on"; "the DA also said that this individual knew me prior allegedly to this. My mother don't even know me. I've been incarcerated for almost 20 something years, I don't know this individual"; he "was never picked out in [a] lineup"; he was entitled to bail, and no one had explained why he had not been afforded bail; and the indictment should be dismissed, citing several cases in purported support of that statement. At the hearing's conclusion, defendant complained that no one had explained to him "what is an insufficient indictment," that he wanted "to know if the true bill that they have is a real true bill," and that he had not "seen the foreman's signature on the true bill." Defense counsel replied, "We've gone over this before, I explained to him the sufficiency of that issue and asked him to move on."
In January 2018, the court rejected defendant's pro se motion to change venue and pro se petition for a writ of habeas corpus after defense counsel declined to adopt them. Defendant moved the following month for substitute counsel and the court granted the motion. A new attorney—defendant's third appointed lawyer in this action—was assigned.[FN1]
In June 2018, the parties appeared for jury selection. Defendant asked the court to relieve his attorney because he "advised me that he's working with the D.A. So I don't need him representing me if he's working with the D.A." The court did not believe that this occurred and denied the request. Jury selection began. At the end of the day, after the prospective jurors were dismissed, defendant complained that he had not received any discovery or the bill of particulars. After the court told defendant that his counsel would [*7]make another copy for him, defendant asked to "put a few things on the record." The court explained that he should talk to his attorney and then the attorney could speak to the court, but defendant asserted that he was "going to go cocounsel." When the court replied that defendant had not made an application to do so, defendant switched to complaining that he was receiving a jury trial: "I never said I wanted a trial by jurors. I never told this individual that I wanted a trial by jurors." The court responded: "You know, Mr. Lewis, I'm assuming now you're trying to play games with this court," noting the multiple times they had discussed the jury trial and jury selection. The next day, defendant argued that the judge was partial because he had presided over the pretrial hearings, defense counsel was ineffective, defense counsel had a conflict of interest, defendant's due process rights had been violated, and he did not have any discovery.
After jury selection and opening arguments, defendant accepted a plea offer based on the understanding that he was a persistent felony offender. The following month, however, defense counsel informed the court that defendant was not in fact a persistent felony offender, and defendant moved to withdraw his plea. During the plea-withdrawal proceeding, the court asked defendant if he understood "what is going on here." In response, defendant launched into yet another string of complaints:
"THE DEFENDANT: "I've been watching the news . . . from the 8 to the 13, that no judge is supposed to give the personal opinion in this courtroom, and you've been giving your personal opinion in my case, since 10/23 of 2016. And you also denied my 30.30-1a and 2a without the DA responding and me receiving the opposition and having the DA write no disposition. It is an issue, I see that's an issue, the bias in court is an issue, and I also, I'm like, I'm serving you if I'm taking this plea back, I don't need Mr. O'Donnell representing me, if I'm going to go to trial, that's what it's looking like. So I take my chances with a new attorney because this attorney is ineffective and I've got paperwork for you.
"THE COURT: I understand what you're saying. So how long will it take you to hire a lawyer?
"THE DEFENDANT: I would represent myself.
"THE COURT: Sorry?
"THE DEFENDANT: I would like to represent myself.
"THE COURT: You're going to represent yourself?
"THE DEFENDANT: Yes.
"THE COURT: I'll deal with that. Mr. O'Donnell is on the case until you can hire another attorney. If you choose to go pro se at the time of trial, I'll entertain your application at that point, but Mr. O'Donnell, you're still on the case. Is it your understanding now that in spite of your exposure, if we go to trial, and the reasons you took the plea, that you now wish to withdraw your previously entered plea of guilty—
"THE DEFENDANT: Yes.
"THE COURT: —and start from scratch?
"THE DEFENDANT: Yes.
"THE COURT: You want me to do that for you?
"THE DEFENDANT: Yes.
"THE COURT: I'm going to do that for you. So your plea is now vacated."
Defendant then proceeded to complain that a "third party is not supposed to be testifying against me at all," the "victim must come" and testify, his parole officer "is not supposed to testifying," and "the cops [are] not supposed to be testifying."
Two months later, as trial was set to begin, defense counsel asked to be relieved because defendant "threaten[ed] to kill [him]." The court denied the request, acknowledging that passions run high before trial and "things are said." Defendant explained that his issue with counsel was a disagreement over trial strategy. He then complained once more about the denial of his CPL 30.30 motion.
At trial, defendant was restrained because, in addition to once again threatening to kill his attorney, he threatened to "slice apart" the court officer. Ultimately, defendant was acquitted of attempted murder in the second degree, and convicted of robbery in the first degree, several other crimes based on the attack, and obstructing governmental administration in the second degree.
The Appellate Division unanimously affirmed (see 218 AD3d 493 [2d Dept 2023]). The Court held that defendant was not deprived of his right to self-representation because his requests to proceed pro se were "not unequivocal," noting that they "were made in the context of his claim of dissatisfaction with counsel" (id. at 493).[FN2]
II.
"Criminal defendants have a constitutional right . . . to represent themselves if they so choose" (People v Baines, 39 NY3d 1, 6 [2022]). But this right "is not absolute" and is subject to "limitations" necessary "to promote the orderly administration of justice" (People v McIntyre, 36 NY2d 10, 17 [1974]). A three-prong test therefore governs a defendant's request to proceed pro se (see id.). The first prong asks whether the request is timely and unequivocal (see id.). If so, the court must conduct an inquiry and determine whether the defendant is knowingly and intelligently waiving their right to counsel; and whether, if the request were granted, the defendant is likely to engage in conduct that would prevent the fair and orderly exposition of the issues (id.).
The majority, excising defendant's words from their context, concludes that defendant's request was unequivocal; our precedent says otherwise. A request to proceed pro se is unequivocal only if "clearly and unconditionally presented to the trial court" (id.). We do not determine this question by focusing on only a portion of a brief exchange recounted on a cold record (see majority op at 9-14). On the contrary, we must look to "the surrounding circumstances in the case as well as [the] defendant's conduct, including manner of expression, demeanor, and word choices" (People v Duarte, 37 NY3d 1218, 1219 n [2022]). And for good reason: as we have repeatedly explained, a defendant cannot be permitted to "pervert the system by subsequently claiming a denial of their pro se right" based on a purported request that the record, viewed as a whole, reveals to have been unserious or insufficiently clear (People v LaValle, 3 NY3d 88, 106 [2004] [emphasis omitted], quoting McIntyre, 36 NY2d at 17; accord People v Silburn, 31 NY3d 144 [2018]). A request that does not "demonstrate an actual fixed intention and desire to proceed without professional assistance" does not suffice to invoke the defendant's right to self-representation (Silburn, 31 NY3d at 150, quoting People v Payton, 45 NY2d 300, 314 [1978]).
Furthermore, the defendant's request must also "reflect a purposeful decision to relinquish the benefit of counsel" (Matter of Kathleen K. [Steven K.], 17 NY3d 380, 386 [2011]). Thus, if a defendant requests self-representation "as a way of obtaining the dismissal of" their assigned counsel, then the request is not unequivocal (see People v Gillian, 8 NY3d 85, 88 [2006] [deeming equivocal the defendant's request for self-representation made in the alternative to a request for new counsel, and, used by the defendant as leverage to compel counsel's dismissal]; see Duarte, 37 NY3d at 1219 [deeming equivocal the defendant's statement that he "would love to go pro se" made after the court denied his application for substitute counsel]; see also LaValle, 3 NY3d 88; Payton, 45 NY2d at 314). The majority fails to persuasively distinguish these cases. Similarly, a self-representation request that is "overshadowed" by requests for other relief is not unequivocal (Payton, 45 NY2d at 314; accord People v Boone, 233 AD3d 623, 624 [1st Dept 2024]; People v Carter, 299 AD2d 418, 419 [2d Dept 2002]; People v Vasquez, 210 AD3d 1302, 1304 [3d Dept 2022]; People v Malone, 119 AD3d 1352, 1354 [4th Dept 2014]). Justice Thurgood Marshall's dissent in Raulerson v Wainwright—cited by the majority (see majority op at 15-16)—aligns with our precedent (469 US 966 [1984, Marshall, J., dissenting from denial of certiorari]). Justice Marshall explained that the rule requiring further inquiry into a defendant's assertion of their "clear and unequivocal desire" to represent themselves does "not apply mechanically to repetitive motions, motions designed to obstruct, or motions that are made at inappropriate times" (id. at 969 & n 1).[FN3]
The record here is clear that defendant's request lacked the indicia of genuineness that this Court has, until today, faithfully considered. Immediately before defendant purportedly invoked his right to self-representation, he stated that he wanted to "take [his] chances with a new attorney because this attorney is ineffective." Only after the court made it clear that it would not assign defendant a fourth attorney by asking defendant how long it would take for him to hire an attorney at his own expense did defendant then change course and ask to represent himself. The record thus reflects, as the Appellate Division unanimously held, that defendant's remarks were far from a "standalone request" to proceed pro se (majority op at 11). Rather, we can "reasonably infer[ ] that the gravamen of [defendant's] complaint stemmed from dissatisfaction with counsel" rather than an unequivocal desire to represent himself (Matter of Kathleen K., 17 NY3d at 387).
Moreover, defendant's request was preceded and followed by an extended barrage of other complaints, further belying the seriousness of his request (see Payton, 45 NY2d at 314 [the defendant's requests to proceed pro se not unequivocal because they "were always overshadowed by applications for adjournments and postponements for reasons which (the defendant) declined to divulge"]). As was defendant's wont, in the midst of a grievance-laden speech, stringing together assorted complaints unrelated to the ongoing hearing on his motion to withdraw his plea that failed to gain any traction with the court, defendant asked to go pro se. He also discussed his previously denied CPL 30.30 (1) (a) and (2) (a) motions; he bemoaned "the bias in court"; he decried the purported ineffectiveness of his trial counsel; and he complained that the victim would not testify at trial, but his parole officer would. In light of this, it is plain that his request to forgo an attorney was "overshadowed" by the purpose of the hearing and his litany of other assertions (id.). Until today, this context was a preeminent concern in our analysis, but the majority casts it aside and instead limits its inquiry to isolated words on a cold page.
Finally, the court's response makes clear that it did not view defendant's request as genuine (see Duarte, 7 NY3d at 1219 n). Indeed, the court stated: "[Defense counsel] is on the case until you can hire another attorney. If you choose to go pro se at the time of trial, I'll entertain your application at that point, but [counsel], you're still on the case." This too shows that the court viewed the gravamen of defendant's request as one for substitute counsel, and did not believe that defendant seriously intended to represent himself. The majority's contrary, unnatural reading of the court's response (see majority op at 14) once again ignores the backdrop of defendant's persistent and obstreperous demands, and his assertion—made [*8]mere seconds before the remarks on which the majority relies—that he would "take [his] chances with a new attorney." This was just the latest of the dozens of requests and demands that defendant lodged over the course of just a few hearings. We are hardly in a position, reading a transcript, to presume to understand defendant's tone of voice and demeanor, and to substitute our own judgment for the trial court's on that basis (see Duarte, 7 NY3d at 1219 n). All the more so here, where the trial court had an extensive history of navigating defendant's challenging behavior and where defendant already had two appointed lawyers relieved.
It defies reason that the majority, viewing defendant's request and this record through the lens of our precedent—and common sense—could conclude that it was serious and unequivocal. And that is because the majority does not view defendant's request through our precedent, but instead collapses the distinction between genuine and disingenuous requests, adopting the precise approach that this Court has consistently rejected: if a defendant says the magic words that they would like to proceed pro se, the court must view the request as unequivocal and act accordingly (cf. Duarte, 37 NY3d at 1219 [deeming equivocal the defendant's statement that he "would love to go pro se"]; Gillian, 8 NY3d at 88 [deeming equivocal the defendant's request for self-representation]; LaValle, 3 NY3d at 106 [deeming equivocal the defendant's request "I would ask that you would dismiss my lawyers and if I could represent myself"]).
III.
Our precedent is clear: we cannot view in a vacuum a defendant's purported invocation of the right to self-representation. We must instead consider the request's full context and give appropriate deference to the trial court in determining whether the request was made in earnest. Betraying that his obstructive behavior was designed to tee up an issue for appeal, at the conclusion of the proceedings, defendant told the judge that he would "see [him] in two years." And here we are, albeit over six years later. The majority's blinkered, formalistic approach sanctions defendant's attempt to "pervert the system" by requesting to proceed pro se as an expression of dissatisfaction with his assigned counsel, as part of a kitchen-sink barrage of irrelevant complaints, only to later claim on appeal "a denial of [his] pro se right" (McIntyre, 36 NY2d at 17). Under the majority's reformulation of our precedent, courts are now required to make an inquiry in response to every fleeting or unserious mention of self-representation. Because our precedent squarely repudiates this bright-line rule, I would affirm.
Order reversed and a new trial ordered. Opinion by Judge Rivera. Chief Judge Wilson and Judges Troutman and Halligan concur. Judge Singas dissents and votes to affirm in an opinion, in which Judges Garcia and Cannataro concur.
Decided May 20, 2025

Footnotes

Footnote 1: Defendant was represented by three successive appointed counsels during the approximately two years his case was pending. The record does not reveal the reasons why the court replaced the first two. However, shortly before he was relieved, the second appointed counsel requested a two-month adjournment to start trial, because he had an upcoming trial date in a separate case. Defendant objected to that request and asked for a "closer court date." He added that he had been held in jail pending trial for over a year, and that no one had given him discovery or addressed his concerns about the sufficiency of the indictment.

Footnote 2: Defendant separately argues that the court erred by failing to conduct any inquiry into defense counsel's request to be relieved due to a conflict in the attorney-client relationship. We have no occasion to consider this alternative ground for a new trial because, for reasons explained infra, we reverse based on defendant's self-representation claim.

Footnote 3: The Supreme Court has similarly held that a defendant may proceed pro se if their request is clear and unequivocal, and the court determines that the request is knowing and intelligent (Faretta, 422 US at 835). Under both the federal and state constitutional frameworks, the court must make a defendant "aware of the dangers and disadvantages of self-representation" (id.; see also People v Crampe, 17 NY3d 469, 482 [2011] [holding that the court erred because it "did not make the requisite searching inquiry to insure that defendant was aware of the drawbacks of self-representation before allowing him to go down that path"]).
Footnote 4: Regardless of whether defendant's request to proceed pro se on June 4, 2018, was unequivocal, it was untimely under the Court's precedent because it was made after the commencement of trial, once jury selection had begun (see People v Crespo, 32 NY3d 176, 183-184 [2018]; CPL 1.20 [11]). While an untimely request is not an absolute bar to proceeding pro se, it "will be granted in the trial court's discretion and only in compelling circumstances" (McIntyre, 36 NY2d at 17). Defendant does not claim that such circumstances supported his untimely request.

Footnote 5: While defendant made other unrelated pro se motions and complained about counsel at various stages of his case, the Court has never held that a defendant who takes such actions forfeits the right to proceed pro se or must make repeated unequivocal requests to trigger a court's obligation to inquire. Indeed, a defendant may make pro se motions precisely because they believe that defense counsel has not provided adequate representation, which may motivate their later decision to proceed pro se. Additionally, the dissent's argument that "defendant's statement [that he would like to represent himself] was prompted by his dissatisfaction with his attorney" ignores that McIntyre's three-prong approach already accounts for the varying reasons why a defendant might request to proceed pro se, including dissatisfaction with counsel (dissenting op at 2). Finally, if the court was unwilling to appoint substitute counsel, defendant could invoke his right to self-representation. The mere fact that an unequivocal request to proceed pro se follows a denied request for new counsel does not mean that request is inauthentic. 

Footnote 6: Contrary to the dissent's claim, our application of McIntyre does not "reformulat[e]" precedent or change the inquiry a court must make (dissenting op at 12). As has been the rule for over 50 years, courts must make a record inquiry into any timely and unequivocal request to proceed pro se, taking that request at face value. It is the dissent's approach, which renders the phrase "I would like to represent myself" equivocal because of other statements defendant made across different appearances in a nearly two-year-old case, that "defies . . . common sense" (id. at 11). It also replaces the straightforward interpretation of a defendant's plain language with a complex assessment of the defendant's behavior to date, a confusing approach that is far more likely to leave courts wondering how best to proceed and lead to greater litigation over the scope of the duty to inquire. Thus, our analysis does not "excis[e] defendant's words from their context" (id. at 7)—it considers precisely the context that McIntyre and its progeny require. Moreover, the dissent's concern that our analysis is "limit[ed] . . . to isolated words on a cold page," divorced from "defendant's tone of voice and demeanor," (id. at 10-11) is true in any case where a court has not engaged in an inquiry. The dissent's observation only supports why it is necessary for a court to inquire into any timely and unequivocal request to proceed pro se. 

Footnote 7: The dissenters' own citation to Justice Marshall's dissent is an acknowledgment that it is a persuasive authority (see dissenting op at 9). However, their attempt to spin it as supporting their analysis falls flat upon minimal scrutiny (see id.). In Raulerson, as here, the defendant "expressed considerable dissatisfaction with his attorney," but Justice Marshall concluded that there "was no suggestion that [the defendant] acted for any inappropriate reason" when he later made an unequivocal request to proceed pro se (469 US at 969 n 1). Thus, there is no basis to conclude that Justice Marshall would have considered defendant's unequivocal request as repetitive, obstructive, or inopportune, despite the dissenters' invocation of this language (see dissenting op at 9).

Footnote 8: In the analogous context of a defendant's request for new counsel due to a conflict, a court must make a minimal inquiry into a seemingly serious request to determine if there is good cause for substitution (People v Sides, 75 NY2d 822, 824 [1990]). When a defendant makes such a request, the court errs if it fails to ask a single question to inquire further. Even if "[t]he court might well have found upon limited inquiry that [a] defendant's request was without genuine basis, . . . it [can]not so summarily dismiss th[e] request" (id. at 825). Inquiries of this kind are necessary to protect a defendant's right to counsel and their intertwined right to self-representation.
Footnote 9: Like the prosecution, the dissent collapses the McIntyre prongs when it asserts that a court need only inquire into a request that is "serious and unequivocal" (see dissenting op at 11) and assumes that defendant's request was merely an effort to express dissatisfaction with counsel instead of a reflection of his desire to proceed pro se (see id. at 9). If, as the dissent speculates, defendant's request was not a knowing, voluntary, and intelligent waiver of counsel—in other words, that it was not "serious"—the best way to confirm that belief is to make an inquiry, as the Court explained in McIntyre (36 NY2d at 19). Without such inquiry, the court risked ignoring a genuine request to proceed pro se. Neither the federal nor state constitutions permit that risk.

Footnote 1: It is unclear from the record why defendant's first attorney was replaced after indictment, but counsel at oral argument explained that the replacement was on defendant's motion (see oral argument tr at 16).

Footnote 2: The Court also rejected defendant's legal sufficiency claim as unpreserved and, alternatively, on the merits (218 AD3d at 493-494). I agree with the Appellate Division and the majority (see majority op at 18) that this claim is unpreserved.

Footnote 3: The majority's omits Justice Marshall's statement of these basic threshold principles, instead skipping straight to his discussion of a court's duty once a defendant has made an unequivocal request (see majority op at 15-16).