People v Addison (2021 NY Slip Op 06225)





People v Addison


2021 NY Slip Op 06225


Decided on November 12, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 12, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, NEMOYER, CURRAN, AND DEJOSEPH, JJ.


697 KA 17-01485

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JEREL W. ADDISON, DEFENDANT-APPELLANT. 






MARK D. FUNK, CONFLICT DEFENDER, ROCHESTER (KATHLEEN P. REARDON OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LISA GRAY OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Supreme Court, Monroe County (Charles A. Schiano, Jr., J.), rendered June 15, 2017. The judgment convicted defendant, upon a jury verdict, of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). The conviction arises from an incident in which the police, during a traffic stop of a two-door vehicle driven by defendant, observed an assault rifle sticking out of a sweatshirt between the front and back seats, and eventually recovered the assault rifle and ammunition from the vehicle upon apprehending defendant and his codefendant passenger after they attempted to flee in the vehicle and then on foot. We affirm.
Defendant contends that the traffic stop was unlawful and, therefore, Supreme Court erred in refusing to suppress evidence obtained as a result thereof. We reject that contention. It is well settled that, "where a police officer has probable cause to believe that the driver of an automobile has committed a traffic violation, a stop does not violate [the state or federal constitutions, and] . . . neither the primary motivation of the officer nor a determination of what a reasonable traffic officer would have done under the circumstances is relevant" (People v Robinson, 97 NY2d 341, 349 [2001]; see Whren v United States, 517 US 806, 812-813 [1996]; People v Hinshaw, 35 NY3d 427, 430-431 [2020]; People v Howard, 129 AD3d 1469, 1470 [4th Dept 2015], lv denied 26 NY3d 968 [2015], reconsideration denied 26 NY3d 1089 [2015]). Moreover, "the credibility determinations of the suppression court are entitled to great deference on appeal and will not be disturbed unless clearly unsupported by the record" (Howard, 129 AD3d at 1470 [internal quotation marks omitted]).
Here, affording great deference to the court's resolution of credibility issues at the suppression hearing (see generally People v Prochilo, 41 NY2d 759, 761 [1977]), we conclude that "the record supports the court's finding that the police officer[s] lawfully stopped defendant's [vehicle] for crossing the [double yellow center] line in violation of Vehicle and Traffic Law § [§ 1120 (a) and] 1128 (a)" (People v Eron, 119 AD3d 1358, 1359 [4th Dept 2014], lv denied 24 NY3d 1083 [2014]; see People v Lewis, 147 AD3d 1481, 1481 [4th Dept 2017]; People v Wohlers, 138 AD2d 957, 957 [4th Dept 1988]). The officers' testimony at the suppression hearing established that they had probable cause to believe that defendant violated those statutes when, just after 1:00 a.m. on an unobstructed roadway with no bicyclists or other impediments to travel present, they observed the vehicle defendant was driving briefly cross over the double yellow center line into the oncoming lane by as much as six inches before returning to its lane (see Lewis, 147 AD3d at 1481; People v Twoguns, 108 AD3d 1091, 1093 [4th Dept 2013], lv denied 21 NY3d 1077 [2013]; People v Ogden, 250 AD2d 1001, 1001 [3d Dept 1998]; [*2]Wohlers, 138 AD2d at 957).
Contrary to defendant's contention and the dissent's assertion, we also conclude that "[t]he police officer[s'] testimony at the suppression hearing does not have all appearances of having been patently tailored to nullify constitutional objections . . . , and was not so inherently incredible or improbable as to warrant disturbing the . . . court's determination of credibility" (People v Walters, 52 AD3d 1273, 1274 [4th Dept 2008], lv denied 11 NY3d 795 [2008] [internal quotation marks omitted]; see People v Jemison, 158 AD3d 1310, 1310-1311 [4th Dept 2018], lv denied 31 NY3d 1083 [2018]; Howard, 129 AD3d at 1470). First, despite being confronted upon the reopening of the suppression hearing with an audio recording of police communications in which one of the officers used slightly different terminology when describing the position of the vehicle in relation to the center line, the officers maintained that they had, in fact, initiated the traffic stop after observing the vehicle cross over the center line. We conclude that the court was entitled to determine, on this record, that the description on the audio recording could reasonably be interpreted as being consistent with the officers' testimony, and thus "[t]here is no basis for disturbing the court's credibility determination[ with respect to] its resolution of any [purported] inconsistencies between [the officers'] testimony and [the] recording" (People v Brown, 14 AD3d 356, 356 [1st Dept 2005], lv denied 4 NY3d 852 [2005]).
Second, we reject defendant's related contention and the dissent's assertion that the officers' suppression hearing testimony should be discredited, and thus that the traffic stop should be deemed unlawful, because the officers failed to disclose that they also had a pretextual reason for stopping the vehicle based on information from a confidential informant conveyed to them by another officer in an earlier phone call. The officers acknowledged when the suppression hearing was reopened that they had failed to disclose in their reports or during their prior testimony that they had a pretextual reason for stopping the vehicle based on information from a confidential informant that a firearm may have been in the vehicle. Nonetheless, one of the officers offered a credible explanation for that initial nondisclosure and the other explained that, consistent with their prior testimony, the officers had not received a "call for service," i.e., a citizen complaint via 911, prior to the traffic stop but, rather, had received a phone call from another officer. We conclude on this record that the officers' testimony "was not so inherently incredible or improbable as to warrant disturbing the . . . court's determination of credibility" after it was presented with the initial omissions and subsequent explanations (Walters, 52 AD3d at 1274 [internal quotation marks omitted]; see generally People v Rivera, 68 NY2d 786, 787-788 [1986]; People v Mayes, 90 AD2d 879, 880 [3d Dept 1982]).
Defendant's challenge to the legal sufficiency of the evidence lacks merit. Viewing the evidence in the light most favorable to the People (see People v Diaz, 15 NY3d 764, 765 [2010]), we conclude that the evidence is legally sufficient to establish that defendant constructively possessed the assault rifle, i.e., that he "exercised 'dominion or control' over the [firearm] by a sufficient level of control over the area in which the [firearm was] found" (People v Manini, 79 NY2d 561, 573 [1992]; see People v Thomas, 165 AD3d 1636, 1636 [4th Dept 2018], lv denied 32 NY3d 1129 [2018], cert denied — US &mdash, 140 S Ct 257 [2019]; see generally Diaz, 15 NY3d at 765). Contrary to defendant's assertion, there was sufficient evidence that the assault rifle was loaded inasmuch as the firearm was possessed by defendant "who, at the same time, possesse[d] a quantity of ammunition [that could] be used to discharge such firearm" (Penal Law § 265.00 [15]; see People v Tillery, 60 AD3d 1203, 1205-1206 [3d Dept 2009], lv denied 12 NY3d 860 [2009]). In addition, we conclude that there was sufficient evidence that defendant's possession of the firearm was knowing (see People v Muhammad, 16 NY3d 184, 188 [2011]; Thomas, 165 AD3d at 1636; see generally People v Diaz, 24 NY3d 1187, 1190 [2015]).
We reject defendant's contention that the verdict is against the weight of the evidence. Viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that, although a different verdict would not have been unreasonable, the jury did not fail to give the evidence the weight it should be accorded (see People v Bleakley, 69 NY2d 490, 495 [1987]; Thomas, 165 AD3d at 1636-1637; Tillery, 60 AD3d at 1205-1206).
Defendant next contends that the court erred by submitting to the jury, as a lesser included offense of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]), the crime of criminal possession of a firearm (§ 265.01-b [1]) as advocated by the [*3]prosecutor instead of criminal possession of a weapon in the fourth degree (§ 265.01 [1]) as requested by defendant. Contrary to defendant's contention, we conclude that any error by the court in that regard is harmless (see People v McIntosh, 33 NY3d 1064, 1065 [2019]; People v Boettcher, 69 NY2d 174, 180 [1987]). Under the circumstances here, the jury's verdict on the highest count of criminal possession of a weapon in the second degree, despite the availability of the next lesser included offense of criminal possession of a firearm for its consideration, forecloses defendant's challenge to the court's refusal to charge the remote lesser included offense of criminal possession of a weapon in the fourth degree, because it dispels any speculation whether the jury might have reached a guilty verdict on still lower degrees of weapon possession (see McIntosh, 33 NY3d at 1065; Boettcher, 69 NY2d at 180).
Finally, defendant contends that he was denied effective assistance of counsel because defense counsel failed to sufficiently investigate and call as witnesses the codefendant passenger and three other inmates who purportedly would have provided exculpatory testimony. We reject that contention. " '[I]t is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations' for counsel's alleged shortcomings" (People v Benevento, 91 NY2d 708, 712 [1998]), and we conclude that defendant has not met that burden here. Instead, the record establishes that defense counsel sufficiently investigated the facts and had strategic and legitimate reasons for declining to call the prospective witnesses, including reasonable concerns about the admissibility of portions of the proposed testimony, the inconsistent accounts of the subject events offered by the codefendant passenger and the possibility that his testimony would be inculpatory, and the weakness of the proposed testimony arising from credibility problems with each of the prospective witnesses (see People v Smith, 82 NY2d 731, 733 [1993]; People v Wheeler, 124 AD3d 1136, 1139 [3d Dept 2015], lv denied 25 NY3d 993 [2015]; People v Kurkowski, 117 AD3d 1442, 1443-1444 [4th Dept 2014]; People v Wainwright, 11 AD3d 242, 243 [1st Dept 2004], lv denied 4 NY3d 749 [2004]). Viewing the evidence, the law, and the circumstances of this case in totality and as of the time of the representation, we conclude that defendant received meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]).
All concur except NeMoyer and DeJoseph, JJ., who dissent and vote to reverse in accordance with the following memorandum: The majority upholds Supreme Court's finding that the police had probable cause to stop defendant's vehicle for a Vehicle and Traffic Law (VTL) violation. We respectfully dissent and vote to reverse the judgment, suppress the physical evidence, dismiss the indictment, and remit for proceedings under CPL 470.45.
While on patrol on the night in question, two on-duty police officers received a cell phone call from an off-duty officer. The off-duty officer advised the on-duty officers that an older-model white BMW was likely transporting an automatic weapon. The off-duty officer was following the vehicle, and he directed the on-duty officers to the relevant location. Within approximately one minute of pulling up behind the subject vehicle, the on-duty officers claim to have witnessed it cross the double yellow line. The on-duty officers then stopped defendant's vehicle, purportedly based on that VTL violation. The officers then discovered the subject gun during the course of the stop. Neither on-duty officer, however, mentioned the call from the off-duty officer or the information that he provided when they wrote out their contemporaneous and lengthy narrative reports later that night.
At the initial suppression hearing, both on-duty officers claimed that they stopped defendant's vehicle solely for the alleged VTL violation. Importantly, both officers affirmatively denied having received a service call that night alerting them to be on the lookout for defendant's vehicle. Based on that testimony, the court refused to suppress the subject gun. On the eve of trial, however, the defense finally received the radio runs from the patrol vehicle. On that recording, one of the on-duty officers is revealed to have said, "He's driving on the center line. Let's go. There's supposed to be a gun in the car" (emphasis added). The court then re-opened the suppression hearing in light of the new information that directly contradicted the on-duty officers' prior testimony.
At the reopened hearing, both on-duty officers had no choice but to admit receiving the off-duty officer's cell phone call and the information thereby conveyed. One of the on-duty officers acknowledged that, despite his prior sworn testimony to having stopped defendant's car solely for a routine traffic infraction, he and his partner had, in fact, received incriminating [*4]information from the off-duty officer prior to the traffic stop. The other on-duty officer likewise admitted that—in contradiction to his prior testimony—the stop was triggered, at least in part, by the information from the off-duty officer. At the close of the reopened suppression hearing, the prosecutor "readily acknowledge[d] that there was deception here, because I myself was kept in the dark about this." Nevertheless, the court again refused to suppress the gun.
That was error. Although due deference must be afforded to the credibility findings of the suppression court, we still have an unyielding responsibility to independently review the court's ultimate determination, and that includes assessing witness credibility when necessary (see People v Harris, 192 AD3d 151, 158 [2d Dept 2020]; see generally People v Romero, 7 NY3d 633, 643-644 [2006]). For these purposes, "allegations of police misconduct do not lose their relevance to a police witness's credibility simply because the alleged bad acts are not regarded in all cases as criminal or immoral" (People v Smith, 27 NY3d 652, 661 [2016]).
This is not a Whren/Robinson case about the officers' primary motivation for the subject stop (Whren v United States, 517 US 806 [1996]; People v Robinson, 97 NY2d 341 [2001]). Of course, pretext stops are legally permissible, but only so long as there is bona fide probable cause of an actual VTL or other technical violation. The fact that a VTL violation can serve as a lawful pretext for a stop motivated primarily by a hunch that might not satisfy the applicable De Bour category does not give the police license to invent a non-existent VTL violation in order to execute that pretext stop. Thus, while an officer's primary motivation in executing a stop will never be dispositive of its legality, an officer's decision to affirmatively testify falsely on the stand about his or her primary motivation for that stop should certainly weigh heavily on his or her credibility when it comes time to decide whether he or she did, in fact, have the bona fide probable cause of a VTL or other technical violation necessary to uphold the stop.
Here, the on-duty officers' admitted decision to affirmatively testify falsely on the stand and conceal the true basis of their stop compels us to discredit their claim to having observed a bona fide VTL violation. Whren and Robinson are not exactly secrets around police precincts, and it makes no sense for those officers to conceal and testify falsely about their primary purpose for the stop had they actually observed a true VTL violation that could have permissibly and justly validated their pretext stop. That is one of the great benefits of the Whren/Robinson doctrine: by allowing officers the latitude to use their intuition to investigate suspected miscreants and thereby protect the public so long as they have some lawful basis for a stop, the doctrine encourages officers to be forthright about the events preceding a stop and thus maximizes a reviewing court's ability to collect all the information necessary to determine the stop's ultimate legality. But that ultimate determination must rest with the courts, and the system breaks down if officers deprive judges of the facts needed to make an objective assessment of a stop's legality (see People v Lopez, 95 AD2d 241, 250 [2d Dept 1983], lv denied 60 NY2d 968 [1983]).
Upon our review of the evidence at these suppression hearings, we would hold that the People failed to carry their burden of demonstrating the legality of the police conduct in initiating the traffic stop (see Harris, 192 AD3d at 165-166). Defendant's motion to suppress should therefore have been granted, and the indictment should have been dismissed. That is, admittedly, strong medicine. Thankfully, such medicine is rarely necessary. But it is necessary here.
Entered: November 12, 2021
Ann Dillon Flynn
Clerk of the Court