People v Berberich (2024 NY Slip Op 51853(U))

[*1]

People v Berberich

2024 NY Slip Op 51853(U)

Decided on August 20, 2024

Justice Court Of The Town Of Clarence, Erie County

Hickey, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through March 11, 2025; it will not be published in the printed Offical Reports.

Decided on August 20, 2024
Justice Court of the Town of Clarence, Erie County

The People of the State of New York,

against
Devin Berberich, Defendant.

Docket No. 23090062

Michael J. Keane, Esq.
Erie County Acting District Attorney
BY: Rachel Lewis Schepart, Esq.
Assistant District Attorney
Attorney for the People
Michael J. Cooper, Esq.
Attorney for the Defendant

Jonathan S. Hickey, J.

The defendant is charged with Driving While Intoxicated, Vehicle & Traffic Law § 1192(2); Driving While Intoxicated, Vehicle & Traffic Law § 1192(3); and Moved from Lane Unsafely, Vehicle & Traffic Law § 1128(a) all relative to charges that were issued on September 7, 2023.
Procedural Posture:
The defendant moved to suppress evidence of criminal activity obtained after his car was stopped by challenging whether there existed the requisite probable cause to stop the vehicle he was operating. A hearing as to the lawfulness of the car stop was commenced pursuant to People v Ingle (36 NY2d 413 [1975]) on March 21, 2024 where Erie County Sheriff's Deputy Raymond [*2]Diebel testified.[FN1]
The hearing was completed on May 30, 2024 when the defendant testified and one exhibit (Defendant's Exhibit B) was entered into evidence.
The parties have waived post-hearing submissions and made their final oral arguments on the record immediately upon the conclusion of the hearing. 
At that time the attorneys agreed that the lawfulness of the traffic stop (specifically the question of reasonable suspicion and/or probable cause) is based on two theories: (a) the call from the Marilla, New York hit-and-run, and/or (2) the defendant crossing the double yellow line on Thompson Road, a separate and distinct Vehicle & Traffic Law infraction.
Findings of Fact and Conclusions of Law:
On September 7, 2023 Erie County Sheriff's Deputy Raymond Diebel was on routine patrol when he received a call of a complaint regarding a car involved in a hit-and-run motor vehicle accident in Marilla, New York. He did not know who made this initial complaint and he did not know who he was looking for other than a pick-up truck with registration listing a Thompson Road [Clarence, New York] address. As a result he drove to the Thompson Road address and backed his patrol car into the driveway of a nearby house to watch for the subject's vehicle. The weather was clear and there were no visibility issues. He soon observed what he understood to be the subject vehicle operating northbound on Thompson Road and he watched it "cross lines/the line" on Thompson.[FN2]
Upon this personal observation, he determined this to be a violation of the Vehicle & Traffic Law.
He admitted on cross-examination that the defendant's vehicle had to cross the double yellow lines to access the driveway, but he also testified he observed the vehicle cross the lines out in the roadway itself. After seeing this separate crossing he drove his patrol vehicle into the driveway of the registered car's address and charged the defendant.
The evidence did not reveal proof of hazards, the defendant was not operating his car in a dangerous or erratic manner, and there was not an accident that Deputy Diebel observed in relation to the operation of the vehicle on Thompson Road.
The defendant explained that when he was driving his car to his house the night of the incident he observed two deputies. One of the police cars was stopped in the same lane of travel he was driving in and he needed to drive outside of his lane to maneuver around the deputy and access his driveway. He said another deputy was approximately 120 yards away from this area. He did not see any emergency lights and he activated his turn signal and "veer[ed] around" the police car in his lane. Defendant testified there was no double yellow line to cross.
Lawfulness of police activity:
The court has reviewed and considered at length the arguments of the parties, scrutinized the hearing testimony, and undertaken legal research on these disputed points to ensure a fair and equal application of the applicable law to the facts presented at the hearing.
The People have the burden at a suppression hearing of showing the legality of the police conduct in the first instance (see People v Baldwin, 25 NY2d 66, 70 [1969]; People v Ponce, 203 AD3d 1628 [4th Dept 2022]). Once the People have met this burden, it is the defendant that bears the burden of proving any illegality of the police conduct (see People v Berrios, 28 NY2d 361 [1971]; People v Baldwin, 25 NY2d 66 [1969]). 
Automobile stops are lawful only when based on probable cause that a driver has committed a traffic violation or when there is reasonable suspicion that the driver or occupants committed a crime (People v Hinshaw, 35 NY3d 427 [2020]; People v May, 81 NY2d 725 [1992]; People v Ingle, 36 NY2d 413 [1975]; People v Rose, 67 AD3d 1447 [4th Dept 2009]). A traffic stop is lawful where the police officer has probable cause to believe the driver of the car committed a traffic violation (People v Robinson, 97 NY2d 341, 349 [2001]; People v Grimes, 133 AD3d 12011202 [4th Dept 2015]; Matter of Deveines v New York State Dept. of Motor Vehs. Appeal Bd., 136 AD3d 1383 [4th Dept 2016]).
The Vehicle and Traffic Law provision that resulted in the stop here is VTL § 1128(a) which reads as follows:
§ 1128. Driving on roadways laned for traffic:
Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:
(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.
The defendant's hearing testimony revealed and created a material factual discrepancy: the defendant has lived at the house where he was stopped his entire life, and he confirmed the accuracy of a photograph depicting the relevant area of roadway that did not depict a double yellow line separating the northbound and southbound lanes. (Emphasis added). This directly contradicts Deputy Diebel creating a question of trial credibility, but this conflict in proof is insufficient at the suppression hearing stage to meet defendant's burden of showing the police acted illegally.
The defendant here argued that the deputies were very far away when they made their charging observations, and the double yellow line that was the basis for the stop simply did not exist. Rather, the defendant stated the road was divided by a dotted line and he was forced to make an early turn due to the deputy blocking the road. This is why the defendant was forced to move from his lane. In sum the defendant argues the People did not meet their burden.
In response the People continue to assert they met their burden based on proof of either the initial call of a hit-and-run creating reasonable suspicion for the car stop and/or probable cause from the direct observations of the alleged traffic violation.
As previously ruled,[FN3]
even though the initial call and complaint was contested here, the testimony in the present hearing revealed that the arresting officer observed a separate and [*3]distinct Vehicle & Traffic Law violation. Therefore, even if the initial call was factually or legally insufficient, Deputy Diebel observed the defendant operate his vehicle (prematurely) across a double yellow line in apparent violation of the Vehicle & Traffic Law. This court again acknowledges the defendant's testimony that a double yellow line did not exist in the subject roadway.
The People here met their burden at the hearing that the police activity was lawful at the outset through the testimony of Deputy Diebel which set forth the factual basis for his conclusion(s) (cf. People v Nektalov, — NY3d —, 2024 NY Slip Op 02725 [2024] (holding where the record is bereft of evidence to support a conclusory belief of over-tinted windows, the People did not meet their burden that the stop was lawful). This court repeats its earlier finding that the defendant has not provided any authority that insufficiencies related to the transmittal of information about the alleged hit-and-run diminishes or prohibits the Deputy's ability to observe a separate and distinct traffic violation which is now law of the case. The second day of the hearing shed no further light on this particular issue, but rather was focused on the lawfulness of the V&T §1128(a) violation related to the question of the existence of a double yellow line. Where the police officer has probable cause to believe the driver committed a traffic violation, neither the primary motivation of the officer nor a determination of what a reasonable traffic officer would have done under the circumstances is relevant (see People v Addison, 199 AD3d 1321, 1322 [4th Dept 2021] (internal citations omitted)).
In sum, the threshold legal standard and burden is much lower at this stage of a criminal proceeding, and the People have met their initial burden. In response the defendant has not shown by a preponderance of the evidence that the police acted unlawfully.
For all the foregoing, it is hereby:
ORDERED, the defendant's motion seeking a determination that the automobile stop was unlawful is denied, and it is further
ORDERED, the parties are directed to appear for the trial of this matter at the first available court night all are available, and this will be scheduled in consultation with the court.
This decision constitutes the order of the court.
DATED: August 20, 2024
Clarence, New York
JONATHAN S. HICKEY
Clarence Town Justice

Footnotes

Footnote 1:At the conclusion of the People's proof the defendant made an oral motion to dismiss the charges based on alleged insufficiencies in the proof offered by the People. The motion was denied in this court's May 16, 2024 order.

Footnote 2:On cross-examination he was asked the leading question if the vehicle crossed a double yellow line, and he answered in the affirmative.

Footnote 3:See FN 1.