People v Davis (2025 NY Slip Op 04300)

People v Davis

2025 NY Slip Op 04300

Decided on July 25, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 25, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CURRAN, J.P., SMITH, GREENWOOD, DELCONTE, AND HANNAH, JJ.

114 KA 22-01858

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
CHRISTOPHER DAVIS, DEFENDANT-APPELLANT. 

TODD G. MONAHAN, LITTLE FALLS, FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (RYAN P. ASHE OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Monroe County Court (Michael L. Dollinger, J.), rendered October 26, 2022. The judgment convicted defendant upon a jury verdict of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]). We affirm.
We reject defendant's contention that County Court erred in refusing to suppress a handgun seized after it fell from a pocket of his sweatshirt while he was being pursued by a police officer. Based on defendant's physical and temporal proximity to the scene of a reported armed robbery and the fact that defendant was walking with someone whose physical characteristics and clothing matched the description of one of the individuals purportedly involved in the robbery, we conclude that the police officer had a founded suspicion that criminal activity was afoot, justifying his initial common-law inquiry of defendant and his companion (see People v Atkinson, 185 AD3d 1438, 1439 [4th Dept 2020], lv denied 35 NY3d 1092 [2020]; People v McKinley, 101 AD3d 1747, 1748 [4th Dept 2012], lv denied 21 NY3d 1017 [2013]; see generally People v De Bour, 40 NY2d 210, 223 [1976]).
We further conclude that the court properly determined that the officer thereafter had the requisite reasonable suspicion to pursue and detain defendant based on the combination of the aforementioned specific circumstances indicating that defendant may have been engaged in criminal activity and his flight in response to the approach by the officer (see Atkinson, 185 AD3d at 1439; People v Harvey, 70 AD3d 1454, 1455 [4th Dept 2010], lv denied 15 NY3d 750 [2010]; People v Martinez, 59 AD3d 1071, 1072 [4th Dept 2009], lv denied 12 NY3d 856 [2009]). Contrary to defendant's further contention, despite some inconsistencies, the officer's testimony was not so "incredible or improbable as to warrant disturbing the . . . court's determination of credibility," which is entitled to great deference (People v Addison, 199 AD3d 1321, 1322 [4th Dept 2021] [internal quotation marks omitted]; see People v Layou, 134 AD3d 1510, 1511 [4th Dept 2015], lv denied 27 NY3d 1070 [2016], reconsideration denied 28 NY3d 932 [2016]; see generally People v Prochilo, 41 NY2d 759, 761 [1977]).
Defendant also contends that the court erred in denying his request to proceed pro se. We reject that contention. "It is well settled that a criminal defendant's constitutional right to counsel concomitantly includes the right to refuse appointed counsel" (Matter of Kathleen K. [Steven K.], 17 NY3d 380, 384-385 [2011]; see Faretta v California, 422 US 806, 817 [1975]; People v McIntyre, 36 NY2d 10, 15 [1974]; see generally US Const Amend VI; NY Const, art I, § 6). In other words, there is a constitutional right "to self-representation at trial, . . . and [a] corresponding—and sometimes competing—requirement that the state provide [a] defendant competent counsel to conduct [their] defense" (People v Stone, 22 NY3d 520, 525 [2014]). [*2]Indeed, the Court of Appeals has recognized that there is an "inherent conflict between a defendant's right to counsel and the right of self-representation" (People v Arroyo, 98 NY2d 101, 102 [2002]). "In light of the multifaceted problems generated by a motion to proceed pro se, the task of the trial court is exceedingly difficult" (McIntyre, 36 NY2d at 14 [emphasis omitted]). The right to self-representation is therefore "subject to certain restrictions," which serve "to promote the orderly administration of justice and to prevent subsequent attack on a verdict claiming a denial of fundamental fairness" (id. at 17). Consequently, "[a] defendant in a criminal case may invoke the right to defend pro se provided: (1) the request is unequivocal and timely asserted, (2) there has been a knowing and intelligent waiver of the right to counsel, and (3) the defendant has not engaged in conduct which would prevent the fair and orderly exposition of the issues" (id. [emphasis omitted]).
As relevant here, before trial defendant informed the court that he did not want his assigned attorney from the public defender's office (assigned counsel) to represent him, and he subsequently requested that he be assigned new counsel. The court thereafter engaged defendant in an extensive colloquy, during which defendant repeatedly expressed that he did not want assigned counsel to defend him because he believed that assigned counsel, the court, the previous County Court Judge, and the two prior public defenders assigned to the case were conspiring together to sabotage his defense in order to protect the arresting officer. When the court responded that it would not assign substitute counsel, defendant stated—repeatedly—that he would represent himself and not permit assigned counsel to continue to represent him if the court did not assign substitute counsel. The court denied the request for substitute counsel, and the trial continued with assigned counsel representing defendant.
Under these facts, we conclude that defendant did not unequivocally request to proceed pro se inasmuch as he only "ask[ed] to proceed pro se as an alternative to receiving new counsel," thereby seeking to "leverage his right of self-representation in an attempt to compel the court to appoint another lawyer" (People v Lewis, — NY3d &mdash, &mdash, 2025 NY Slip Op 03011, *3-4 [2025]; see People v Gillian, 8 NY3d 85, 88 [2006]; People v LaValle, 3 NY3d 88, 104-107 [2004]). Indeed, defendant repeatedly "made clear that he did not wish to proceed pro se," and "couched [his requests] as a means to secure new counsel" (Lewis, — NY3d at &mdash, 2025 NY Slip Op 03011, *4), including by stating that he had "no choice" but to represent himself if the court did not assign new counsel, and that he "d[id]n't want to represent [him]self" but would do so if the court refused to appoint another attorney (see Gillian, 8 NY3d at 88; LaValle, 3 NY3d at 105; cf. Lewis, — NY3d at &mdash, 2025 NY Slip Op 03011, *3-4). Defendant made no "standalone request to proceed pro se" (Lewis, — NY3d at &mdash, 2025 NY Slip Op 03011, *4); rather, all of his "requests to proceed pro se were made in the alternative; he sought to represent himself only because [the court] refused to replace . . . assigned counsel who had displeased him" (Gillian, 8 NY3d at 88). A request to proceed pro se is equivocal where, as here, "it 'does not reflect an affirmative desire for self-representation' and instead shows that 'self-representation was reserved as a final, conditional resort' " (People v Dixon, 42 NY3d 609, 618 [2024], quoting Kathleen K., 17 NY3d at 387; see Gillian, 8 NY3d at 88; LaValle, 3 NY3d at 104-107). Inasmuch as defendant's requests consisted of "equivocal and hesitant statements about proceeding pro se" (Lewis, — NY3d at &mdash, 2025 NY Slip Op 03011, *4; see Gillian, 8 NY3d at 88; LaValle, 3 NY3d at 104-107), the court's duty to "make a searching inquiry . . . to determine whether [the] request[s] w[ere] knowing, voluntary, and intelligent" was not triggered (Lewis, — NY3d at &mdash, 2025 NY Slip Op 03011, *1; see generally McIntyre, 36 NY2d at 17).
Defendant further contends that the court abused its discretion in refusing to assign substitute counsel. We reject that contention. "Whether counsel is substituted is within the 'discretion and responsibility' of the trial judge . . . , and a court's duty to consider such a motion is invoked only where a defendant makes a 'seemingly serious request[ ]' " supported by "specific factual allegations of 'serious complaints about counsel' " (People v Porto, 16 NY3d 93, 99-100 [2010]; see People v Sides, 75 NY2d 822, 824 [1990]). "If such a showing is made, the court must make at least a 'minimal inquiry,' and discern meritorious complaints from disingenuous applications by inquiring as to 'the nature of the disagreement or its potential for resolution' " (Porto, 16 NY3d at 100, quoting Sides, 75 NY2d at 825). Upon conducting that inquiry, "counsel may be substituted only where 'good cause' is shown" (id.; see People v Gibson, 126 AD3d 1300, 1301-1302 [4th Dept 2015]).
Here, the alleged conflict of interest defendant raised with respect to assigned [*3]counsel—which resulted from a federal civil rights action that defendant had brought against, inter alia, the public defender's office—related to defendant's belief that assigned counsel was conspiring with the court and the prior assigned public defenders to sabotage defendant's case in order to protect the arresting officer from perjury charges. The court allowed defendant to raise and explain that issue, and then addressed it, repeatedly, noting that "there was no conspiracy" and "no grand design" against defendant. On this record, we conclude that the court "properly balanced defendant's request for substitute counsel against the need for the expeditious and orderly administration of justice and did not abuse its discretion when it ordered defense counsel to continue to represent him throughout the trial" (People v Lewis, 228 AD3d 1226, 1227 [4th Dept 2024], lv granted 42 NY3d 1080 [2025] [internal quotation marks omitted]; see People v Hunter, 171 AD3d 1534, 1535-1536 [4th Dept 2019], lv denied 33 NY3d 1105 [2019]).
We reject defendant's contention that he was denied effective assistance of counsel. To establish ineffective assistance of counsel, " 'it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations' for [defense] counsel's alleged shortcomings" (People v Benevento, 91 NY2d 708, 712 [1998], quoting People v Rivera, 71 NY2d 705, 709 [1988]). We conclude that defendant failed to meet that burden. Instead, "the evidence, the law, and the circumstances of [this] case, viewed in totality and as of the time of representation, reveal that [assigned counsel] provided meaningful representation" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v Ruiz, 234 AD3d 1329, 1330 [4th Dept 2025]; People v Rogers, 70 AD3d 1340, 1340 [4th Dept 2010], lv denied 14 NY3d 892 [2010], cert denied 562 US 969 [2010]).
Defendant additionally contends that the court abused its discretion in failing to order, sua sponte, a competency examination pursuant to CPL 730.30 (1) inasmuch as, prior to trial, the court commented on defendant's mental state after he asserted that public defenders and court personnel were conspiring against him. We reject that contention. Preliminarily, we note "that the issue of competency to stand trial may be raised on appeal despite the absence of any objection to the . . . court's failure to cause the defendant to be examined" (People v Winebrenner, 96 AD3d 1615, 1615 [4th Dept 2012], lv denied 19 NY3d 1029 [2012] [internal quotation marks omitted]). With respect to the merits, we note that, although a defendant in a criminal proceeding "is presumed to be competent" (People v Tortorici, 92 NY2d 757, 765 [1999], cert denied 528 US 834 [1999]), a court "must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person" (CPL 730.30 [1]). The determination whether to order a competency examination, either sua sponte or upon defense counsel's request, lies within the sound discretion of the court (see People v Morgan, 87 NY2d 878, 879-880 [1995]). Here, we conclude that the court did not abuse its discretion by failing to order a competency examination (see People v Robinson, 225 AD3d 1266, 1267 [4th Dept 2024], lv denied 42 NY3d 1021 [2024]; People v Thorpe, 218 AD3d 1124, 1124-1125 [4th Dept 2023]). Specifically, the record establishes that, despite defendant's brief comments espousing a belief in a conspiracy against him, he "demonstrated an understanding of the proceedings and had the ability to assist in his own defense," and that his comments about the purported conspiracy, arising out of his mistrust and frustration with regard to the criminal justice system, were "indicative of obstinance rather than incompetency" (Thorpe, 218 AD3d at 1125; see Robinson, 225 AD3d at 1267; cf. People v Arnold, 113 AD2d 101, 106 [4th Dept 1985]).
With respect to defendant's contention that the court erred in denying his applications pursuant to Batson v Kentucky (476 US 79 [1986]), defendant "failed to object to the court's procedure for determining his Batson challenge[s] and thus . . . failed to preserve his contention for our review" (People v Scott, 81 AD3d 1470, 1471 [4th Dept 2011], lv denied 17 NY3d 801 [2011]; see People v McPherson, 213 AD3d 1261, 1263 [4th Dept 2023], lv denied 39 NY3d 1112 [2023]; People v Lewis, 192 AD3d 1532, 1534 [4th Dept 2021], lv denied 37 NY3d 993 [2021]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (see CPL 470.15 [6] [a]).
Viewing the evidence in light of the elements of the crime as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject defendant's contention that the verdict is against the weight of the evidence (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Even assuming, arguendo, that an acquittal would have been reasonable, we do not conclude that the jury "failed to give the evidence the weight it should be accorded" (id.). To the extent that there were "inconsistencies in [a witness's] testimony, [the inconsistencies] were properly considered by the jury[,] and there is no basis for disturbing its determinations" (People [*4]v Cirino, 203 AD3d 1661, 1663 [4th Dept 2022], lv denied 38 NY3d 1132 [2022] [internal quotation marks omitted]; see People v Wiggins, 225 AD3d 1305, 1307 [4th Dept 2024]; see generally People v Harris, 15 AD3d 966, 967 [4th Dept 2005], lv denied 4 NY3d 831 [2005]).
Finally, the sentence is not unduly harsh or severe.
All concur except Curran, J.P., and Hannah, J., who dissent and vote to reverse in accordance the following memorandum: We respectfully dissent and vote to reverse the judgment and grant a new trial because we agree with defendant that County Court erred in denying his unequivocal requests to proceed pro se at trial without conducting the requisite searching inquiry to determine whether defendant was knowingly and intelligently waiving his right to counsel (see People v Taylor, 237 AD3d 1543, 1545 [4th Dept 2025]). It is well settled that "the right to represent oneself at trial is guaranteed under both the New York State and Federal Constitutions" (People v Crespo, 32 NY3d 176, 178 [2018], cert denied — US &mdash, 140 S Ct 148 [2019]; see People v Arroyo, 98 NY2d 101, 103 [2002]). Indeed, "even in cases where the accused is harming [themselves] by insisting on conducting [their] own defense, respect for individual autonomy requires that [they] be allowed to go to jail under [their] own banner if [they] so desire[ ] and if [they] make[ ] the choice with eyes open" (People v McIntyre, 36 NY2d 10, 14 [1974] [internal quotation marks omitted]). A defendant may invoke the right to proceed pro se under certain conditions: "(1) the request [must be] unequivocal and timely asserted, (2) there [must have] been a knowing and intelligent waiver of the right to counsel, and (3) the defendant [must] not engage[ ] in conduct which would prevent the fair and orderly exposition of the issues" (Crespo, 32 NY3d at 178; see McIntyre, 36 NY2d at 17).
As the Court of Appeals recently clarified, a request to proceed pro se is equivocal where it is made "as an alternative to receiving new counsel," that is, where the request is essentially an attempt to "leverage [a defendant's] right of self-representation in an attempt to compel the court to appoint another lawyer" (People v Lewis, — NY3d &mdash, &mdash, 2025 NY Slip Op 03011, *3-4 [2025]). Moreover, as relevant here, the Court reiterated, that a defendant "may assert their right to self-representation for a variety of reasons, including dissatisfaction with counsel" (id. at &mdash, 2025 NY Slip Op 03011, *2 [emphasis added]; see McIntyre, 36 NY2d at 16; cf. People v Alexander, 109 AD3d 1083, 1084 [4th Dept 2013]). Indeed, the Court of Appeals had previously stated that even to the extent that some requests of a defendant may be read as "conditioning a request for [a] new
attorney[ ] with a request for self-representation[, that] does not necessarily make the latter request equivocal" (People v LaValle, 3 NY3d 88, 107 [2004]). Ultimately, in Lewis, the Court emphasized that "McIntyre plainly requires only a single unequivocal and timely request to trigger the court's duty to inquire" (Lewis, — NY3d at &mdash, 2025 NY Slip Op 03011, *4).
Here, unlike the majority, we conclude that defendant satisfied the condition that his request to represent himself be unequivocal because his requests to the court "demonstrate[d] an actual fixed intention and desire to proceed without professional assistance in his defense" (People v Silburn, 31 NY3d 144, 150 [2018]; cf. People v Griffin, 209 AD3d 1299, 1300 [4th Dept 2022]). Specifically, defendant stated, among other things, that he would prefer to represent himself and that he was "comfortable" doing so and added: "I'd rather represent myself . . . and I'm making that clear." Even if there were other instances where defendant's requests to represent himself were expressly phrased as an alternative to his request for new counsel (see Lewis, — NY3d at &mdash, 2025 NY Slip Op 03011, *3-4), the aforementioned statements satisfied the requirement that there be at least one unequivocal request to proceed pro se (see id. at &mdash, 2025 NY Slip Op 03011, *4). Indeed, to conclude otherwise with respect to the statements identified above would be to refuse to take defendant's requests "at face value" and to engage in the contextual approach plainly rejected by the Court of Appeals in Lewis (id. at — n 6, 2025 NY Slip Op 03011, *4 n 6). Ultimately, like the majority, we read Lewis as providing the guiding principles for our determination on whether defendant's requests were unequivocal; however, we view the facts of the case differently and conclude that they warrant reversal and a new trial.
We agree with the majority that many of defendant's requests to represent himself were voiced only after the court made clear that it would not grant his request for substitute counsel. Specifically, the record reflects that the court made that determination at the very beginning of its colloquy with defendant, repeatedly informed him—throughout the colloquy—that it would not [*5]appoint him new counsel, and inquired directly whether defendant wished to represent himself. Indeed, in response to defendant's complaints about defense counsel, the court specifically informed him that his "only other real option at this point [was] to represent [himself]." Thus, the relevant colloquy between the court and defendant was framed from the very start with the court advising defendant that he must either proceed to trial with assigned defense counsel or represent himself.
Given how the colloquy unfolded, we therefore disagree with the majority that defendant only "ask[ed] to proceed pro se as an alternative to receiving new counsel" (id. at &mdash, 2025 NY Slip Op 03011, *3), inasmuch as the court had already removed the possibility of assigning new counsel as an alternative. In other words, it was the court that framed the choice before defendant as either proceeding to trial with his current defense counsel or representing himself. Under those circumstances, defendant did not "couch[ ] [his requests] as a means to secure new counsel" (id. at &mdash, 2025 NY Slip Op 03011, *4). Rather, instead of trying to actually secure new assigned counsel—an option clearly foreclosed by the court—defendant was merely responding to the court's explanation that he could either proceed with current counsel or represent himself.
Importantly, we note that the majority does not assert that defendant's "self-representation request[s]" were " 'overshadowed' by requests for other relief" (id. at &mdash, 2025 NY Slip Op 03011, *7 [Singas, J., dissenting]). That is consistent with the fact that the court gave defendant two divergent choices—either proceed to trial with his third assigned counsel or represent himself. Just as importantly, the majority also does not conclude that defendant's repeated requests to represent himself "lacked the indicia of genuineness" (id.) or were "fleeting or unserious" (id. at &mdash, 2025 NY Slip Op 03011, *8 [Singas, J., dissenting]). Simply put, on the record before us, when viewed through the lens of the analysis in Lewis, we conclude that at least one of defendant's repeated and clear requests to represent himself was sufficiently unequivocal to require the court to conduct an inquiry to "ensure that defendant's waiver of counsel was 'made competently, intelligently, and voluntarily' " (id. at &mdash, 2025 NY Slip Op 03011, *4).
Additionally, we conclude that a new trial is warranted because, to the extent the court considered defendant's request to proceed pro se, it failed to conduct the required inquiry to determine whether defendant was knowingly and intelligently waiving his right to counsel (see generally People v Crampe, 17 NY3d 469, 481 [2011], cert denied 565 US 1261 [2012]; Taylor, 237 AD3d at 1545). Rather, in denying defendant's request, the court's primary rationale was its perception that defendant did not have the necessary legal skills to represent himself. It is well settled, however, that "[m]ere ignorance of the law cannot vitiate an effective waiver of counsel as long as the defendant was cognizant of the dangers of waiving counsel at the time it was made" (People v Hall, 49 AD3d 1180, 1181 [4th Dept 2008] [internal quotation marks omitted]; see People v Ryan, 82 NY2d 497, 507-508 [1993]; McIntyre, 36 NY2d at 17-18).
We also reject the People's contention that defendant "abandoned any request to proceed pro se . . . [by] acquiesc[ing] to continued representation by counsel at subsequent proceedings" (People v Couser, 210 AD3d 1513, 1514 [4th Dept 2022], lv denied 39 NY3d 1071 [2023] [internal quotation marks omitted]). Specifically, as discussed above, under Lewis, all that is required is a "single unequivocal and timely request to trigger the court's duty to inquire" (Lewis, — NY3d at &mdash, 2025 NY Slip Op 03011, *4), and therefore defendant was not required to make a new application to represent himself at any subsequent appearances in order not to abandon his request to proceed pro se. Regardless, there is no evidence to show abandonment of that request because, even after the court told defendant that it would not appoint substitute counsel or allow defendant to proceed pro se, defendant stated that he did not "want to talk to [defense counsel]
. . . I don't want him to represent me. I don't want him." Indeed, defense counsel characterized the situation as one in which the court "force[d him] to represent [defendant]." In short, at no point did defendant ever expressly withdraw his request to proceed pro se (cf. People v Dublino, 229 AD3d 1075, 1076 [4th Dept 2024], lv denied 42 NY3d 1052 [2024]). Moreover, we note that this is not a case where a defendant acquiesced to counsel, abandoning any request to proceed pro se, following the court's appointment of new assigned counsel—the court never appointed substitute counsel, despite defense counsel's request that the court do so if it denied defendant's request to proceed pro se (cf. People v Gillian, 8 NY3d 85, 88 [2006]; People v Dunn, 229 AD3d 1220, 1222 [4th Dept 2024]; Couser, 210 AD3d at 1514).
Alternatively, and also contrary to the majority's conclusion, we agree with defendant that [*6]the court erred in denying his request for substitute counsel, because it failed to conduct a sufficient inquiry into his complaints regarding a serious breakdown in his relationship with defense counsel. A court's duty to consider a motion to substitute counsel is invoked when "a defendant makes a seemingly serious request[ ]" for new counsel (People v Porto, 16 NY3d 93, 100 [2010] [internal quotation marks omitted]; see People v Sides, 75 NY2d 822, 824 [1990]). If a defendant makes "specific factual allegations of serious complaints about counsel," then "the court must make at least a minimal inquiry" into "the nature of the disagreement or its potential for resolution" (Porto, 16 NY3d at 100 [internal quotation marks omitted]; see People v Gibson, 126 AD3d 1300, 1301-1302 [4th Dept 2015]), and the court may substitute counsel where good cause is shown (see Porto, 16 NY3d at 100; Sides, 75 NY2d at 824; Gibson, 126 AD3d at 1302).
Here, we conclude that defendant made the requisite "seemingly serious request[ ]" (Porto, 16 NY3d at 100) for substitute counsel based on a breakdown in communication and potential conflict of interest between defendant and defense counsel. Defendant repeatedly told the court that he did not want defense counsel to represent him because of his belief that defense counsel was part of a conspiracy to sabotage his case, and he filed a civil lawsuit in federal court against, inter alia, defense counsel. Defense counsel's comments to the court also indicated that the relationship between him and defendant had broken down. He noted a near-total lack of communication between him and defendant and indicated that defendant's "animosity and hostility towards [defense counsel] and [his] office[] [was] going to be an issue." We therefore conclude on this record that "[d]efendant's request on its face suggested a serious possibility of irreconcilable conflict with his lawyer, as evidenced by the acknowledgment of counsel that a complete breakdown of communication and lack of trust had developed in their relationship" (Sides, 75 NY2d at 824-825).
"[W]here[, as here,] potential conflict is acknowledged by counsel's admission of a breakdown in trust and communication, the trial court is obligated to make a minimal inquiry" (Porto, 16 NY3d at 101; see People v Darwish, 195 AD3d 1515, 1517 [4th Dept 2021]; People v Tucker, 139 AD3d 1399, 1400 [4th Dept 2016]). The court failed to fulfill that obligation here. It did not ask defendant any questions about his relationship with defense counsel—indeed, the court did not ask defense counsel any questions about the representation, even after defense counsel raised his own concerns about continuing with the representation and requested that there be a substitution. Further, the court made no serious inquiry into defendant's civil case against defense counsel, and we conclude that, "although there is no rule requiring that a defendant who has filed a [civil case] against [their] attorney be assigned new counsel, the court was required to make an inquiry to determine whether defense counsel could continue to represent defendant in light of the [civil suit]" (People v McCullough, 83 AD3d 1438, 1440 [4th Dept 2011], lv denied 17 NY3d 798 [2011]; see Tucker, 139 AD3d at 1400). "[H]ad the court conducted that inquiry, it might well have determined that, despite . . . defendant's allegedly having filed a [civil suit], [that action] was merely a delaying tactic or that . . . defense counsel was, despite the [civil suit], fully capable of providing . . . defendant with effective representation" (Tucker, 139 AD3d at 1400-1401 [internal quotation marks omitted]). The court could not, however, summarily dismiss the request (see Sides, 75 NY2d at 825; Darwish, 195 AD3d at 1517-1518).
Entered: July 25, 2025
Ann Dillon Flynn
Clerk of the Court